41 F.3d 571
 95 Ed. Law Rep. 907
 John DOE, a minor, and as next best friend and guardian,
Ruth Rios; Ruth Rios, individually, Plaintiffs-Appellants,
v.
Joseph BAGAN; Loretta Higa; Adams County Department of
Social Services, named as Adams County Social
Services Department; Adams County,
Board of County Commissioners,
Defendants-Appellees,
and
Judith Graham, Phyllis Berti, Ken Larusso, Kevin Callison,
Ellen Haug, David Lopez, as individuals and members of the
Board of Adams County School District No. 1; Adams County
School District No. 1, Defendants.
 No. 93-1120.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 15, 1994.
 
 1
 Robert M. FitzGerald, Denver, CO, for plaintiffs-appellants.
 
 
 2
 Sylvia V. Kirk, Asst. County Atty., Robert J. Loew, Adams County Atty., Brighton, CO, for defendants-appellees.
 
 
 3
 Before MOORE and BRORBY, Circuit Judges, and VRATIL,* District Judge.
 
 
 4
 VRATIL, District Judge.
 
 
 5
 Plaintiffs, a mother and her minor son, brought suit under 42 U.S.C. Sec. 1983 in the United States District Court for the District of Colorado against two caseworkers for the Adams County Department of Social Services as individuals, the Adams County Department of Social Services, and the Adams County Board of County Commissioners for damages arising from the investigation of the son, John Doe, on suspicion of possible child abuse. Plaintiffs' complaint alleged a variety of constitutional violations as well as various state-based tort law claims. The case was initially reviewed by a United States magistrate judge who determined that the Sec. 1983 claims should be dismissed because plaintiffs failed to allege the deprivation of any rights protected by the Constitution. The district court accepted the recommendations of the magistrate judge and granted defendants' motion for summary judgment on the federal claims. It then dismissed the state law claims for want of subject matter jurisdiction.
 
 
 6
 On appeal,[1] plaintiffs confine their argument to two areas: they contend that defendants violated John Doe's right to due process and his right to privacy. Because we agree with the district court that plaintiffs have failed to identify a constitutional right which defendants have abridged, we affirm.
 
 
 7
 We review a grant of summary judgment de novo, using the same standards as those relied on by the district court. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). We therefore determine whether the showing made by plaintiffs is sufficient to establish the existence of the elements essential to their case, and on which they would bear the burden of proof at trial. Edwards ex rel. Edwards v. Rees, 883 F.2d 882, 883 (10th Cir.1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). "To state a valid cause of action under Sec. 1983, a plaintiff must allege the deprivation by defendant of a right, privilege, or immunity secured by the Constitution and laws of the United States while the defendant was acting under color of state law." Hill v. Ibarra, 954 F.2d 1516, 1520 (10th Cir.1992).
 
 
 8
 Plaintiff John Doe, a nine-year-old boy at the time of this incident, came to the attention of the Adams County Department of Social Services (Social Services) as the possible perpetrator of sexual abuse on a five-year-old girl of his acquaintance. Defendant Joseph Bagan, a caseworker for Social Services, contacted Doe's school and arranged to interview Doe. He spoke with Doe alone in the principal's office with the door closed for approximately ten minutes. Doe denied having sexually assaulted the girl.
 
 
 9
 After his questioning of Doe, Bagan went to Doe's home to discuss the matter with Doe's parents. Because the girl had tested positive for chlamydia, Bagan also wanted Doe to be tested for the disease. According to Doe's mother, Bagan told her that "bad things" would happen to her son if she did not "do things his [Bagan's] way." Appellants' App. at 329. She testified that she was upset and afraid and felt pressured to have her son tested.[2] The mother subsequently took her son to a private physician who arranged for the testing. The test results on Doe were negative. Nonetheless, Doe's name was placed by defendant Loretta Higa, one of the Social Services caseworkers, on the Colorado Central Registry for Child Protection as a child abuser. Plaintiffs also claim that in the course of her investigation, defendant Higa informed other neighborhood children of the suspicions about Doe, resulting in his public humiliation.
 
 
 10
 In their answer, the individual defendants claimed qualified immunity; defendant Social Services claimed Eleventh Amendment immunity and further asserted that it is not a "person" for purposes of Sec. 1983. The Board of County Commissioners argued that it cannot be liable under a respondeat superior theory for the actions of the other defendants.
 
 
 11
 We begin with the threshold inquiry in cases involving the qualified immunity defense: has the plaintiff alleged the violation of a constitutional right? See Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Once a defendant pleads a qualified immunity defense and moves for summary judgment, "the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This determination is necessary because "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id.; see also Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir.1988). In Siegert, 500 U.S. 226, 111 S.Ct. 1789, the Supreme Court clarified the analytical approach for cases involving a claim of qualified immunity. The threshold inquiry in such cases is whether the plaintiff has alleged the violation of a clearly established constitutional right. Id. at 231, 111 S.Ct. at 1793. Before a court can decide whether the right asserted by the plaintiff is "clearly established," it must determine "whether the plaintiff has asserted a violation of a constitutional right at all." Id.
 
 
 12
 Plaintiffs here argue that John Doe had a due process right to assistance during his interview with Bagan, an event they characterize as a "custodial investigation."[3] Plaintiffs, however, do not specify what type of assistance the Constitution would require under these circumstances, nor do they identify any authority from which such a right would emanate.[4]
 
 
 13
 The protection afforded by the Fourteenth Amendment due process clause applies whenever the state attempts to deprive a citizen of life, liberty, or property. Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). Plaintiffs do not claim a deprivation of life or property here. Their claim, instead, is apparently grounded in what they perceive was a deprivation of Doe's liberty arising from his unassisted interview with Bagan, an event plaintiffs characterize as "proceedings." See Appellants' Br. at 13-16.
 
 
 14
 The Supreme Court has acknowledged that freedom from bodily restraint is a liberty interest protected by the Constitution. Ingraham, 430 U.S. at 673-74, 97 S.Ct. at 1413-14. That interest, however, does not extend to restraints that are insignificant. Id. at 674, 97 S.Ct. at 1414 (recognizing a de minimis level of interference with bodily freedom "with which the Constitution is not concerned"). We agree with the district court that this brief detention by a social services caseworker is not of constitutional dimension. Of course, had the investigation here proceeded further, Doe would have been entitled to all of the constitutional protections associated with the criminal and judicial process. The ten minute initial interview with a social services caseworker, however, was a de minimis interference with Doe's liberty, insufficient at that stage to trigger constitutional liberty concerns. This brief interference with Doe's freedom is not the kind of deprivation of a "privilege[ ] long recognized at common law as essential to the orderly pursuit of happiness by free men" historically protected by the due process clause. See Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). We agree with the district court that Doe did not enjoy any procedural due process rights which could have been offended here.
 
 
 15
 Plaintiffs also allege that defendants violated John Doe's due process rights by destroying his reputation and thereby denying him his right to an education and future employment. There are at least two flaws in this argument. Injury to reputation, by itself, is not a liberty interest protected by the Fourteenth Amendment. Paul v. Davis, 424 U.S. 693, 708-09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). In order to recover, a plaintiff must show that the damage to his reputation is combined with an injury to a right or status established by state law. Id. at 710-12, 96 S.Ct. at 1164-66. Here, plaintiffs allege that the humiliation Doe endured at the hands of his classmates when they learned of the suspicion against him made him miserable at school and thus denied his state-guaranteed right to a public education.[5] We acknowledge that school age children in Colorado must be given the opportunity to receive a free public education. Lujan v. Colorado State Bd. of Educ., 649 P.2d 1005, 1018-19 (Colo.1982) (en banc). It is obvious, however, that Doe was not denied his right to public education. He was only denied his request to attend the public school of his choice. Plaintiffs cite no Colorado authority, and we have found none, indicating that the right to a public education encompasses a right to choose one's particular school.
 
 
 16
 Doe also claims that the alleged defamation damaged his future employment opportunities. Again, under the facts of this case, Doe has failed to allege the violation of a constitutional right. As explained in Paul v. Davis, 424 U.S. at 710, 96 S.Ct. at 1165, "a variety of interests which are difficult of definition ... are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process clause." Under some circumstances, an interest in future employment opportunity may attain constitutional status within the meaning of the Due Process Clause "by virtue of the fact that [it has] been initially recognized and protected by state law." Id. If the State seeks to remove or alter the protected status of such an interest, the procedural guarantees of the Fourteenth Amendment must be observed. Id. at 710-11, 96 S.Ct. at 1165. In this case, however, as in Paul, the State had not extended to Doe "any legal guarantee of present enjoyment of reputation which has been altered as a result of [defendants'] actions." See id. at 711-12, 96 S.Ct. at 1165-66. Doe, who is not now and has never been a public employee, has no particular interest in employment which had been "recognized and protected by state law," id. at 710, 96 S.Ct. at 1165, and which was "distinctly altered or extinguished," id. at 711, 96 S.Ct. at 1165, by defendants' actions. Moreover, Doe has not shown any other interest or status recognized and protected by state law that has been altered or extinguished as a result of the state action complained of. Id. at 711, 96 S.Ct. at 1165. His allegations of damage to future employment opportunities are not "sufficiently real and immediate to show an existing controversy." Blum v. Yaretsky, 457 U.S. 991, 1000, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982).[6]
 
 
 17
 Plaintiffs next assert that Doe's right to privacy was abridged when defendant Bagan coerced him into submitting to a painful and intrusive test. Plaintiffs rightly assert that where the state seeks to intrude into an area in which society recognizes a heightened privacy interest, a substantial justification is required to make a search reasonable under the Fourth Amendment. Winston v. Lee, 470 U.S. 753, 767, 105 S.Ct. 1611, 1620, 84 L.Ed.2d 662 (1985). The problem with plaintiffs' claim, however, is that the state had not compelled or caused the intrusion of which they complain. Granted, defendant Bagan wanted Doe to undergo the test, and for purposes of summary judgment, we must assume that he told Doe's mother that "bad things" would happen to her son if she did not cooperate. Doe's mother, however, did at all times remain free to refuse to have her son tested until later in the investigatory process. It is uncontested that defendant Bagan, in his interview with Doe's parents, repeatedly informed them that the investigation was in a very preliminary stage. Doe was never in state custody, and his mother took him independently to a doctor of her choice. A statement by defendant Bagan that if the mother did not do things his way, bad things would happen to her son, while perhaps providing the basis for some type of state law tort claim, is not the kind of state-compelled intrusion into an area of personal privacy contemplated by Fourth Amendment privacy jurisprudence. Those cases deal with much more direct interference by the state. Compare Winston, 470 U.S. 753, 105 S.Ct. 1611 (effort by state to compel arrestee to undergo invasive surgery to recover bullet); Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (police entry, by force if necessary, into private residence without warrant); South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (police inventory of contents of impounded car); United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (border patrol stops of vehicles and interrogation of occupants); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (eavesdropping by FBI agents on telephone booth used by suspect); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (physician ordered by police officer to draw blood sample of arrestee). Because plaintiffs claim injury to Doe's right to privacy, we see the action of Doe's mother as the intervening cause of any injury to Doe. The action of the state in this case is causally too remote to implicate the Fourth Amendment. Thus, plaintiffs have stated no constitutional right which defendants have allegedly violated.
 
 
 18
 We conclude, therefore, that none of plaintiffs' Sec. 1983 claims amount to the deprivation of a right, privilege, or immunity secured under the Constitution. Plaintiffs, therefore, may not prevail on this part of their burden, thus making the grant of summary judgment in favor of all defendants appropriate.[7] The district court's dismissal of the state law claims was also correct. See United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); 28 U.S.C. Sec. 1367(c)(3).
 
 
 19
 The judgment of the United States District Court for the District of Colorado is AFFIRMED.
 
 
 
 *
 Honorable Kathryn H. Vratil, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 The magistrate judge's report and recommendation concluded that any privacy claim based on the testing had been waived because Doe's mother had consented to the test. It is unclear whether the magistrate judge had any evidence before him going to the mother's claim of coercion. Her affidavit apparently was not on file with the court until it was attached as an exhibit to plaintiffs' response to the magistrate judge's recommendations. Appellant's App. at 325-329
 
 
 [3]
 Plaintiffs' use of the term "custodial investigation" implies a claim under either the Fourth Amendment for an unreasonable seizure, or under the Fifth Amendment and Miranda for failure to advise Doe of his right to remain silent and to be assisted by counsel. The facts of this case do not support a claim under either theory
 Even assuming that Doe had been "seized" for purposes of the Fourth Amendment, such a seizure is only unconstitutional if unreasonable. A seizure of this type is reasonable if it is " 'justified at its inception,' and 'reasonably related in scope to the circumstances which justified the interference in the first place.' " Edwards ex rel. Edwards v. Rees, 883 F.2d 882, 884 (10th Cir.1989) (quoting New Jersey v. T.L.O., 469 U.S. 325, 341, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985)). The seizure here was justified at its inception because a victim of child abuse had identified Doe as her abuser; a ten minute interview with a social services caseworker was reasonably related in scope to determining Doe's role in the incident. See id. This seizure, therefore, was reasonable as a matter of law.
 With regard to Doe's implied allegation that he was in custody for Miranda purposes, we note that "the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam)). Although Doe may not have believed he was free to leave the interview, that fact alone did not make the session with Bagan custodial. Just as the motorist's belief in Berkemer that he was not free to drive off without the police officer's permission failed to render that situation custodial for Miranda purposes, see id. at 436, 440, 104 S.Ct. at 3148, 3150, so here, whether Doe believed he could leave is similarly beside the point. The test under Berkemer is whether, during the interview, a reasonable nine-year-old would have understood himself to be "subjected to restraints comparable to those associated with a formal arrest." Id. at 441-42, 104 S.Ct. at 3150-51. Plaintiffs have offered no evidence to suggest that the interview with Bagan involved any of the raiments of arrest or approached the potentiality for compulsion with which the Court was concerned in Miranda. This was simply an interview by a caseworker incident to an ongoing child abuse investigation.
 
 
 [4]
 Plaintiffs do not appeal the district court's dismissal of their Sixth Amendment right to counsel claim
 
 
 [5]
 Doe's mother attempted to transfer Doe to another school within the district. This request was refused, apparently because Doe's special education needs could not be met as fully at another facility. Appellants' App. at 69
 
 
 [6]
 Plaintiff cites Valmonte v. Bane, 18 F.3d 992 (2d Cir.1994), as supplemental authority. In Valmonte, the Second Circuit held that the plaintiff stated a valid cause of action for deprivation of her liberty interest by virtue of her inclusion on the New York State Central Register of Child Abuse and Maltreatment. Id. at 1002. There, the plaintiff's chosen field of employment was child care. Under New York law, all child care providers must consult the Register. If they wish to hire someone listed there, they must explain their reasons in writing. Id. at 1001
 Colorado law requires school boards to make inquiry of the department of education before any person is hired to determine whether that person is included on the state central registry of child protection, see Colo.Rev.Stat. Secs. 22-32-109.7(1), 22-2-119. Even assuming that these Colorado statutes could in some circumstances implicate a protected liberty interest under the analysis employed in Valmonte, the alleged injury here is too remote and speculative to confer standing.
 
 
 [7]
 Because plaintiffs have failed to allege the violation of a constitutional right as required to state a claim under Sec. 1983, we need not consider whether the various defendants are entitled to immunity. Like the plaintiff in Siegert, 500 U.S. 226, 111 S.Ct. 1789, their claims fail at an analytically earlier stage, before consideration of immunity, qualified or otherwise, is necessary. See id. at 227, 111 S.Ct. at 1791