**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 20 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EMIL A. TONKOVICH,

      Plaintiff - Appellant,

v.

KANSAS BOARD OF REGENTS;
UNIVERSITY OF KANSAS; JAMES
TURNER; WILLIAM R. DOCKING;
KENNETH C. HAVNER; and
ROBERT V. TALKINGTON,

      Defendants,

   and

ROBERT C. CALDWELL; TOM E.
HAMMOND; JOHN B. HIEBERT;
KAREN KREPPS; JOHN G.
MONTGOMERY; PHYLLIS NOLAN;
FRANK C. SABATINI; SIDNEY
WARNER; GENE A. BUDIG;
DELBERT M. SHANKEL; P.
DELBERT BRINKMAN; DAVID E.
SHULENBURGER; ROBERT H.
JERRY, II; SIDNEY A. SHAPIRO;
REGINALD L. ROBINSON; A.
KIMBERLY DAYTON; ELINOR P.
SCHROEDER; ELLEN E. SWARD;
SANDRA C. MCKENZIE; ANN
VICTORIA THOMAS; ROSE A.
MARINO; H. RUTHERFORD
TURNBULL, III;  NANCY ANN
DAHL; E. P. JOHNSEN; JOHN
MICHEL; and DELORES RINGER,

No. 00-3136

individually and in their individual capacity; and ROBERT HEMENWAY, Chancellor,

Defendants - Appellees.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-CV-2199)**

Emil A. Tonkovich, pro se (Richard P. Hutchison of Landmark Legal Foundation, Kansas City, Missouri, on the briefs).

William Scott Hesse, Assistant Attorney General, State of Kansas, Topeka, Kansas (Timothy B. Mustaine of Foulston & Siefkin L.L.P., Wichita, Kansas, for Appellee Jerry; Bruce D. Mayfield, Overland Park, Kansas, and Michael Evan Jaffe of Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for Appellees Dayton, Robinson, Schroeder, Shapiro, and Sward; Tammy M. Samogye of Lathrop & Gage L.C., Overland Park, Kansas, for Appellees Turnbull, Dahl, Johnsen, Michel, and Ringer; Thomas A. Hamill of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Overland Park, Kansas, for Appellees Marino and Thomas; Jeffrey A. Chanay of Entz & Chanay, Topeka, Kansas, for Appellees Brinkman, Budig, Hemenway, Shankel, and Shulenberger; John I. O'Connor of The Advocates Group, Pittsburg, Kansas, for Appellee MacKenzie; Carla J. Stovall, Attorney General for the State of Kansas, Topeka, Kansas, for Appellees Caldwell, Hammond, Hiebert, Krepps, Montgomery, Nolan, Sabatini, and Warner, on the brief), for Defendants-Appellees.

_____

Before **KELLY**, **McKAY**, and **MURPHY**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

-2-

Following a lengthy administrative hearing process, Plaintiff was fired from his tenured teaching position at the University of Kansas School of Law for allegedly engaging in a sex act with one of his students after discussing grades. He subsequently sued the University, the Board of Regents, and numerous University administrators and professors in their official and individual capacities, asserting violations of state law and 42 U.S.C. § 1983. His § 1983 claim specifically alleged, in relevant part, that Defendants, individually and collectively, had violated his Fourteenth Amendment rights to substantive and procedural due process and equal protection. Plaintiff sought both monetary and equitable relief.

In 1996, the district court dismissed the § 1983 claims against the University, the Board of Regents, and the administrators and professors in their official capacities, except the University Chancellor, on Eleventh Amendment grounds. The individual Defendants then sought qualified immunity from the federal claims, which this court eventually granted in Tonkovich v. Kansas Board of Regents, 159 F.3d 504 (10th Cir. 1998) [hereinafter Tonkovich I], based on the fact that Plaintiff had not alleged any conduct that constituted due process or equal protection violations. This court remanded the case to the district court for dismissal of the individual Defendants and for additional proceedings consistent with the opinion. See id. at 534.

The district court accordingly dismissed the individual Defendants. This left Plaintiff with only one remaining federal cause of action: his § 1983 claim for reinstatement against the University Chancellor in his official capacity. The Chancellor moved to dismiss the equity claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and all the individual Defendants moved to dismiss the state law claims for lack of federal jurisdiction. Based on the Tonkovich I holdings, the district court ruled that Plaintiff had not stated a claim upon which relief could be granted against the Chancellor and dismissed the § 1983 reinstatement claim. Lacking a cognizable federal claim, the court also dismissed the pendent state law claims.

Plaintiff appeals, arguing that the district court erred in dismissing the reinstatement claim against the Chancellor, in dismissing the state law claims, and in declining to recuse himself as requested by Plaintiff in 1995. We have jurisdiction under 28 U.S.C. § 1291.

We first address the district court's decision to dismiss Plaintiff's § 1983 due process- and equal protection-based reinstatement claim against the University Chancellor. We review de novo a Rule 12(b)(6) dismissal for failure to state a claim. See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). In assessing whether the complaint sufficiently articulates a claim for which relief may be granted, we must accept as true all

well-pleaded allegations and view them in the light most favorable to Plaintiff. See id. If, after doing so, "it appears beyond doubt that" Plaintiff "can prove no set of facts in support of his claim which would entitle him to relief," then dismissal is required. Id. (quotation and citation omitted).

In Tonkovich I, this court discussed Plaintiff's copious complaint in minute detail. See Tonkovich I, 159 F.3d at 510-15. We do not think it necessary to do so again. Although Tonkovich I dealt with qualified immunity, its analysis and, more importantly, its holding are germane to our Rule 12(b)(6) inquiry. The relevance becomes apparent upon comparing the two analyses. First, both analytical frameworks employ the same factual lens: "[A]ll of the well-pleaded allegations in the complaint [are accepted] as true." Id. at 510 (quotations and citation omitted). Second, the qualified immunity inquiry itself—whether Defendants (1) violated (2) clearly established law—requires a court to confront an obvious Rule 12(b)(6) issue: whether Plaintiff has alleged a legal violation at all. Put more specifically, both analyses require the court to determine whether Plaintiff has argued facts that, if proven, would demonstrate illegal conduct by Defendants for which relief may be granted.

Significantly, the Tonkovich I court granted the individual Defendants qualified immunity because it concluded that Plaintiff's complaint did not indicate that any of the Defendants even violated his procedural or substantive

due process or equal protection rights.  See id. at 526 (discussing lack of procedural due process violations); id. at 529-32 (discussing lack of substantive due process violations); id. at 532-33 (discussing Plaintiff's failure to even allege a proper equal protection claim).  In short, the court took Plaintiff's factual allegations as true and still determined that none of his asserted rights had been violated.  Stare decisis, see United States v. Meyers, 200 F.3d 715, 720 (10th Cir. 2000), and the law of the case doctrine, see McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1034 (10th Cir. 2000), compel us to follow Tonkovich I.  That panel's holding plainly dictates the conclusion that Plaintiff "can prove no set of facts in support of his claim which would entitle him to relief" and that the complaint must therefore be dismissed pursuant to Rule 12(b)(6).[1]  Sutton, 173 F.3d at 1236.

Nonetheless, Plaintiff maintains that the district court erred in dismissing his reinstatement claim against the University Chancellor.  He argues that Tonkovich I does not control his appeal for two reasons.  First, Plaintiff contends

---

[1]The fact that Tonkovich I disavowed any intent to review the merits of the case, 159 F.3d at 515-16, does not alter our conclusion.  The panel did not do a Rule 12(b)(6) review of the merits, despite acknowledging its relation to a qualified immunity analysis, because the court lacked jurisdiction to do so.  Id. However, that does not devalue Tonkovich I's relevance to a subsequent Rule 12(b)(6) analysis such as this.  Indeed, in light of the law of the case doctrine, it would be ludicrous to argue that we are free to construe the same aspects of Plaintiff's complaint differently than did Tonkovich I, although we address essentially the same issue.

that Tonkovich I did not address important aspects of his substantive and procedural due process claims or his equal protection claim and thus cannot provide the basis for dismissing those claims. We disagree. Based on our review of Plaintiff's briefs, the complaint, and Tonkovich I, we conclude that Tonkovich I adequately addressed all of Plaintiff's federal claims with possibly one minor exception. Tonkovich I mentioned the underlying facts, see Tonkovich I, 159 F.3d at 514, but arguably never analyzed Plaintiff's substantive due process claim that he was accused of and fired for conduct (besides the sexual encounter) that had not theretofore been prohibited. See Aplt. Br., at 33-36. This conduct included holding a student's hand while asking her who her favorite teacher was and "negligent" social interaction with students. See id.; see also Tonkovich I, 159 F.3d at 514.

Even if this conduct was not prohibited, Plaintiff's claim does not warrant reinstatement because the record plainly shows that Plaintiff would have been fired solely for his student sexual encounter. Any additional findings of misbehavior were simply meant to further justify the University's decision. Indeed, the faculty hearing committee, which conducted the administrative proceedings and possessed independent authority to recommend whatever sanction it thought appropriate, expressly stated that a majority of the committee was "especially persuaded to reach the dismissal recommendation because of the

-7-

gravity of the [sex] act that Professor Tonkovich committed in dealing with [the student] and because [the majority of the committee] believe[s] that the [sex] act and grades discussions accompanied each other." Appellee's App. at 190-91. In sum, Plaintiff's allegation that he was fired for holding another student's hand or for "negligent" social behavior with students completely lacks record support and therefore cannot sustain his claim for reinstatement.

Second, Plaintiff asserts that Tonkovich I does not mandate dismissal because it dealt solely with the conduct of each individual Defendant whereas his remaining equitable reinstatement claim hinges on Defendants' collective misfeasance. However, this argument ignores the scope of Tonkovich I's holding. The panel held that not one Defendant violated any of Plaintiff's asserted federal rights. Short of reconsidering and rejecting Tonkovich I, we fail to see how we could nevertheless find collective wrongdoing warranting the extraordinary remedy of reinstatement. In summary, we agree with the district court that the thorough holdings of Tonkovich I require dismissal of Plaintiff's reinstatement claim against the University Chancellor.

Plaintiff next argues that the district court abused its discretion in dismissing without prejudice the state law claims against the individual Defendants. Title 28, section 1367 of the United States Code states that "district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the

district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In the instant case, the district court dismissed all of the § 1983 claims over which it had original jurisdiction. Section 1367 thus expressly grants the court discretion to dismiss the supplemental state law claims as well. Plaintiff has provided no authority, and next to no argument, suggesting how the district court abused its discretion. In fairness, such an argument would be exceedingly difficult to make in the case at hand, where, given the relative lack of pretrial proceedings—including a total absence of discovery—considerations of "'judicial economy, convenience, and fairness'" do not favor "'retaining jurisdiction.'" Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995) (quoting Thatcher Enter. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)). Instead, it appears that Plaintiff primarily relies on the position that the § 1983 reinstatement claim should never have been dismissed in the first place, thus negating the need to dismiss the state law claims. However, we have already affirmed the dismissal of the reinstatement claim and can see no reason in the record why the state law claims were not properly dismissed too. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); see also Bateman v. City of West Bountiful, 89 F.3d 704, 709 n.5 (10th Cir. 1996); Doe v. Bagan, 41 F.3d

571, 577 (10th Cir. 1994).

Finally, Plaintiff asserts that the district judge abused his discretion by refusing to recuse himself, and Plaintiff asks this court to reassign the case on remand to a district court judge outside the District of Kansas. However, our conclusion that Plaintiff's federal and state claims no longer belong in federal court renders the recusal issue, with its request for prospective relief, moot.

**AFFIRMED**.