(July 14, 2009)

In the Matter of TATEANA R., a Person Alleged to be a Juvenile Delinquent, Appellant. [883 NYS2d 476]—

Order of disposition, Family Court, Bronx County (Robert R. Reed, J.), entered on or about July 11, 2008, which adjudicated appellant a juvenile delinquent, upon a fact-finding determination that she had committed acts, which, if committed by an adult, would constitute the crimes of petit larceny and criminal possession of stolen property in the fifth degree, and placed her on probation for a period of up to 12 months, unanimously affirmed, without costs.

On the morning of March 25, 2008, school safety officials at the New Day Academy, a public school in the Bronx, informed the school dean that an "irate" parent was at the school. The parent was complaining that appellant had borrowed her daughter's iPod and refused to return it. The dean called appellant, then a 13-year-old student, into his office. It is undisputed that the dean's intentions were to locate the iPod and return it to its owner.

Coincidentally, two uniformed police officers assigned to a number of schools were visiting New Day Academy that morning. The dean asked one of those officers to "stick around," while he questioned appellant. However, the dean let the officers know that the mother did not come to the school to press charges, and that she just wanted her daughter's property returned. One officer sat in on the interview in the dean's office, and the other waited in the hallway.

The interview lasted approximately 45 minutes, during which time the dean asked appellant what she knew of the whereabouts of the iPod. He confronted appellant with conflicting statements made by other students and pointed out inconsistencies in her own statements. As the meeting progressed, the dean told appellant that her explanations were getting ridiculous, and he pleaded with her to give the iPod back. Appellant then stated, "I am not giving back the iPod." Until this point, the police officer was mainly observing the interaction. However, upon hearing this inculpatory statement he advised appellant

that she could be arrested. Appellant's aunt, who was present at the school, also came in to the dean's office and asked appellant to give back the property. Appellant denied that she had the iPod, refused to return it, and was placed under arrest.

Appellant moved to suppress her inculpatory remarks, on the ground that they were the product of a custodial interrogation, conducted in the absence of her parents and without *Miranda* warnings. After holding a hearing on the suppression motion, the Family Court denied suppression.

The record supports the court's finding that appellant was not subjected to a custodial interrogation. It is uncontested that the dean brought appellant to his office to address the complaints of a fellow student's mother. The dean's actions were consistent with the school's policy in addressing problems between students, and his goal in calling appellant to his office was to elicit the relevant information to recover the missing iPod. The presence and minimal activity of a police officer during the dean's questioning did not "create a police-dominated custodial atmosphere," such to require the dean to administer *Miranda* warnings (*People v Ray*, 65 NY2d 282, 286 [1985] [*Miranda*'s protections are only invoked upon a showing that a public servant is involved in law enforcement activity, or that a civilian is acting cooperatively or under his or her direction]; *Matter of Angel S.*, 302 AD2d 303 [2003]). The interview was not instigated by the police, nor was it in furtherance of a "police-designated objective" (*Ray*, 65 NY2d at 286). The observing officer provided minimal input to the dean, and his participation was not directed towards obtaining a confession, but, instead, to help locate the missing iPod (*id.* at 286-287; *see Angel S.*, 302 AD2d at 303).

Even if we were to assume the requisite degree of state action in the dean's office to invoke appellant's constitutional protections, the record supports the court's finding that the appellant was still not subject to a custodial interrogation warranting *Miranda* warnings. First, the dean's office is ordinarily not considered an additional restraint for a student, "who is not literally 'free to leave' without permission during school hours" (*Angel S.*, 302 AD2d at 303). In addition, the test for a "custodial interrogation" is whether a reasonable 13 year old, innocent of any crime, would have thought that her freedom of movement had been significantly restricted (to a degree equivalent to a formal arrest) while she was in the dean's office answering his questions (*Matter of Kwok T.*, 43 NY2d 213, 219-220 [1977]; *see also People v Yukl*, 25 NY2d 585, 589 [1969], *cert denied* 400 US 851 [1970]; *Doe v Bagan*, 41 F3d 571, 574 n 3 [1994] [principal's office interview not custodial]).

The record does not support appellant's contention that suppression was warranted here. Being summoned to the dean's office is an unpleasant but not unusual occurrence for any student, and the presence of the officer in the dean's office did not transform the school disciplinary encounter into a custodial interrogation (*see Angel S.*, 302 AD2d at 303-304). Furthermore, there is no evidence that the officer in the hallway acted so as to convey the impression he was restricting appellant's freedom of movement. Accordingly, the Family Court properly denied suppression of appellant's inculpatory statements. Because the evidence at the fact-finding supported the findings of petit larceny and fifth degree criminal possession of stolen property, we affirm the order appealed. Concur—Gonzalez, P.J., Tom, Catterson, Richter and Abdus-Salaam, JJ.