HILL, Senior Circuit Judge:
Sherry Hearn was terminated from her position as a high school teacher for refusing to take a drug test after marijuana was allegedly found in her car in the school’s parking lot. She sued defendants alleging, among other things, denial of her substantive and procedural due process rights, intentional breach of contract, violations of the Fourth and Fifth Amendments. She sought damages as well as reinstatement. The district court granted summary judgment for defendants on all claims and Hearn brought this appeal. For the following reasons, we affirm.
I.
Sherry Hearn was a teacher in Savannah for many years. She was employed under a contract which required that she abide by the policies of the Board of Education of Chatham County (Board).
In 1992, the county enacted its “Safe School Plan” which called for “zero-tolerance” of drugs, alcohol and weapons. In 1993, the Board promulgated a “Drug-Free Workplace Policy” (DFWP) governing its employees. The policy is intended to “deter users and abusers of alcohol, drugs and other controlled substances.” *1331 It provides for drug testing of any employee when “supervisor observations or other objective circumstances reasonably support a suspicion that an employee may have violated the Board drug and alcohol policy.”[1] The policy further requires that such testing be conducted within two hours of the incident which generates the “reasonable suspicion.” An employee’s refusal to consent to the drug test, or to a search of her personal property located at the school is cause for termination.[2] Finally, “[a]ny employee who tests positive ... [for] alcohol, drugs or other controlled substances will be terminated.”
In April of 1996, campus and Chatham County, Georgia police conducted a “drug lockdown” and random drug search at Hearn’s high school in Savannah. Hearn’s car was in the school’s rear parking lot, unlocked and with its passenger side window down.
The Chatham County deputy’s drug-sniffing dog alerted at Hearn’s vehicle. The deputy let the dog enter the car through the passenger window. The dog alerted on the vehicle’s closed ashtray. A campus officer opened it and found a partially burned, hand-rolled cigarette. He testified that he field-tested it for marijuana, and it tested positive.[3] The officers noticed the faculty parking permit on the dash and took it with them.
The officers went to the school’s principal, Linda Herman, and informed her of these events. She summoned Hearn, who denied knowledge or possession of any marijuana. One of the County’s officers “Mirandized” Hearn, telling her that she probably would be charged with criminal possession of marijuana.
Herman informed Hearn that, under the DFWP, she must take a urinalysis drug test within two hours. Hearn refused. Herman gave Hearn a warning letter which directed her to take the drug test. The letter stated:
[I]n the course of a drug search, a substance [found to have tested positive for cannabinoid] was found in your personal vehicle.... Based on this finding, in compliance with BOE Policy 766 — Drug Free Workplace, you are hereby directed to submit to a drug test for reasonable suspicion within [the two-hour limit]. Your failure to comply may result in disciplinary action.
Hearn, however, continued to refuse to take the drug test. Later, the Superintendent of Schools for Chatham County suspended her.[4] He recommended that she be terminated for “insubordination” and “other good and sufficient cause” as the result of her failure to consent to take the drug test within the prescribed two hour period.
The Board provided Hearn with a hearing. She appeared with counsel and testified. At the end of the hearing, the Board made no findings of fact, but voted to accept the superintendent’s recommendation and terminated Hearn. Hearn appealed to the State Board of Education, which issued a written opinion upholding the Board.
H.
Hearn’s termination was for insubordination — her refusal to take the drug test within the prescribed two hour period. She argues that she cannot be terminated for her refusal because she was under no *1332 obligation to take the drug test. She was not obliged to take the test because there was no “reasonable suspicion” as required by the Board’s policy prior to directing an employee to take the test. There was no reasonable suspicion because the search of her car was illegal under both the Board’s own policy which requires an employee’s consent or a search warrant in order to search an employee’s personal property at school, and under the Fourth Amendment. We find no merit in either of these contentions.[5]
First, the Board’s policy regarding searches of employee property is legally irrelevant to the search of Hearn’s car. The Board’s policy applies only to intraschool events, i.e., those involving only school officials and school employees. It provides what will happen when reasonable suspicion arises in an exclusively intra-school setting, as when school officials discover circumstances generating reasonable suspicion that an employee is using drugs.
That was not the case here. Reasonable suspicion arose in the context of a drug sweep of a parking lot by local law enforcement officers whose dog alerted at Hearn’s car — a law enforcement event. Neither the Board’s policy nor Hearn’s contract of employment trumps the legal authority of law enforcement officers to perform such a sweep or the subsequent search. The officers’ authority is limited only by the Constitution.
Hearn implicitly recognizes this distinction. She makes much of the fact that both the Superintendent and Herman testified that the “reasonable suspicion” which required Hearn’s consent to a drug test was based on the campus police officer’s finding of marijuana in her car, an intra-school event, not on the dog sniff and alert, a county law enforcement event. Her argument is that since a campus police officer actually found the marijuana, the Board’s policy governed his search and it should not have been conducted without her consent. Because the search was without her consent, no reasonable suspicion could arise from it and she was not required to consent to the drug test.
We find no basis in the law or in the real world to distinguish two legally distinct events in the one sweep and search. Merely because a campus police officer was present during the sweep and happened to be the one to find the marijuana does not change the fact that this was a law enforcement event, not bound by any school policy or employment contract. Even if, as Hearn argues, the Board’s policy gave employee’s a heightened expectation of privacy with regard to their personal property at school, that expectation does not bind local law enforcement. They are not parties to the contract. Whatever expectation of privacy Hearn had in her vehicle during a law enforcement event must be located in constitutional law, not local school board policies.
Second, the Constitution does not provide Hearn with any expectation of privacy in the odors emanating from her car. A dog sniff of a person’s property located in a public place is not a search within the meaning of the Fourth Amendment. United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (sniff of a person’s luggage is only minimally intrusive and is not a Fourth Amendment search); Merrett v. Moore, 58 F.3d 1547, 1553 n. 11 (11th Cir.1995) (“The use of dogs on the exterior of the cars constitutes no search”); United States v. Seals, 987 F.2d 1102, 1106 (5th Cir.1993) (sniff of vehicles exterior no search); United States v. Morales-Zamora, 914 F.2d 200, 205 (10th Cir.1990) (same); United States v. Rodriguez-Morales, 929 F.2d 780, 788 (1st Cir.1991)(same).
*1333 Furthermore, the alerting of a drug-sniffing dog to a person’s property supplies not only reasonable suspicion, but probable cause to search that property. United States v. Banks, 3 F.3d 399, 402 (11th Cir.1993) (“[P]robable cause arises when a drug-trained canine alerts to drugs”); United States v. Scarborough, 128 F.3d 1373, 1378 (10th Cir.1997) (“It is undisputed that a drug sniffing dog’s detection of contraband in itself establishes probable cause for a search warrant”).
When the property alerted to is in a vehicle, the Constitution permits a search of the vehicle immediately, without resort to a warrant. California v. Acevedo, 500 U.S. 565, 581, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (upholding warrantless search of a paper bag in an automobile which the police had probable cause to believe contained contraband); United States v. Forker, 928 F.2d 365 (11th Cir.1991); See also Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
The search of Hearn’s car, therefore, did not violate the Fourth Amendment. It was based upon the probable cause generated by the dog sniff, and justified by the automobile exception to the general requirement for a warrant.
Thus, there was a reasonable suspicion generated by these circumstances regarding Hearn’s possible drug use. At this point, the Board’s policy was triggered.[6] Hearn’s refusal to give her consent to Board’s request for a drug test gave rise to the possibility of her termination under that policy. Her subsequent termination, therefore, did not violate either her contract of employment nor the Board’s policy, and she is not due to be reinstated for these reasons.
Hearn’s next argument is that she was wrongfully terminated for exercising her rights under the Fifth Amendment when she relied upon the exercise of her constitutional right to remain silent. She contends that because the officer Miran-dized her, she cannot be terminated for exercising her right to remain silent. This argument is without merit. The production of body fluids is non-testimonial. See Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Hearn has not offered any authority that the production of urine does not fall within this rule, nor do we know of any. See National Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (production of urine may be compelled). Hearn was not forced to testify against herself in violation of the Fifth Amendment.[7]
III.
Hearn’s contract with the Board does not vitiate the authority of the law enforcement officers to search her car under the circumstances of this case. Nor were any of Hearn’s constitutional rights violated. Accordingly, the judgment of the district court is AFFIRMED.

. This policy lists a variety of circumstances which cause reasonable suspicion to arise. Although the circumstances of this case are not specified, the list is not exhaustive.

. The policy provides that "[t]he School System will discipline employees in its sole discretion, up to and including immediate discharge ... for any violation of this policy, including ... (2) refusing to submit to testing; (3) refusing to execute a release/consent form; (4) failing to cooperate with an investigation or search.”

. The positive finding was later confirmed by the Crime Lab.

. Hearn did take the drug test the following day on her attorney's advice. The result at that time was negative.

. To the extent that these contentions also raise property-interest based procedural and substantive due process claims, they are barred by McKinney v. Pate, 20 F.3d 1550 (llth Cir.1994) (failure to show absence of.an adequate state remedy is an absolute bar to federal relief).

. Although the police officer told Hearn that she might be criminally charged, the intra-school employment investigation was governed by the Board's policy.

. We do not reach the issue of whether the Eleventh Amendment bars Hearn from recovering damages because we find against her on her claims.