**Hunter Adrian MARNER, a Minor, By and Through his mother and next friend, Wanda Marie MARNER, Plaintiffs,**

v.

**EUFAULA CITY SCHOOL BOARD; Susan L. Lockwood, in her official capacity as superintendent of the Eufaula City School Board; Janis Biggers, in her official capacity as a member of the Eufaula City School Board; Jimmy S. Calton, Sr., in his official capacity as a member of the Eufaula City School Board; Louise Conner, in her official capacity as a member of the Eufaula City School Board; Otis Hill, in his official capacity as a member of the Eufaula City**

---

School Board; James A. Lockwood, in his official capacity as a member of the Eufaula City School Board; and Gary Atkins, in his official capacity as principal of Eufaula High School, Defendants.

No. CIV.A.01–A–758–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 23, 2002.

Thomas Martele Goggans, Elizabeth Vickers Addison, Montgomery, AL, for Plaintiffs.

Robert Turner Meadows, III, Capell Howard PC, Opelika, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### Introduction

The Plaintiff, Hunter Adrian Marner, a minor, through his mother and next friend,

Wanda Marie Marner, (hereinafter referred to, as referred in the caption of the Complaint, as "Plaintiffs") filed a Complaint in this case on June 22, 2001. The Plaintiffs bring claims for deprivation of procedural due process, deprivation of substantive due process, and violation of his right to freedom from unreasonable searches and seizures. The Plaintiffs seek declaratory relief, an injunction, and attorneys' fees and costs.

The Defendants in the case are the Eufaula City School Board, Susan L. Lockwood in her official capacity as Superintendent of the Eufaula City School Board; Gary Atkins in his official capacity as principal of Eufaula High School; and Janis Biggers, Jimmy S. Calton, Sr., Louise Conner, Otis Hill, and James Lockwood in their official capacities as members of the Eufaula City School Board (collectively "the Defendants").

Because claims are being asserted under the Constitution of the United States, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

The Defendants filed a Motion for Summary Judgment, which after oral argument, this court denied, finding that there were genuine questions of material fact for trial. On May 22, 2002, the court conducted a bench trial on the merits of the case. Upon a full consideration of the testimony, exhibits, briefs, and argument of counsel, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

Hunter Marner was a student at Eufaula High School during the 2000–2001 school year. He was an A student who participated in football and tennis, and was a member of the honor society. He wishes to attend the United States Naval Academy in Annapolis, Maryland and fears that disciplinary action taken by the Defendants against him will prevent him from being accepted to that institution.

On May 10, 2001, law enforcement officials, in conjunction with school officials, conducted a drug search operation at Eufaula High School whereby dogs were used to identify cars in which drugs might be located. The dogs used in this search employed a method whereby they sat by the car in which the odor of illegal narcotics was detected. The canine handlers who participated in the search were Captain Earl Ketchum ("Ketchum"), Sergeant Ronnie Dubose, Sergeant Blair Welk, and Sergeant Aaron Robinson of the Department of Corrections at Easterling Corrections Center in Clio, Alabama. School Resource Officer Calvin Smith ("Smith"), Assistant Principal Rod Prewitt, and David Williams ("Williams") were the school officials participating in the search. Lieutenant Todd Register ("Register"), Sergeant Jerry Palmer ("Palmer"), Investigator Larry Hubbard, Investigator David Dubose ("Dubose"), and Steve Hanners ("Hanners") were law enforcement officials who accompanied the various canine teams.

The law enforcement officers followed a procedure whereby if one of the drug sniffing dogs alerted on a car, that car would be marked with yellow evidence tape, and the car decal or license number was recorded. The student upon whose car a dog had alerted was then summoned to the parking lot where a search of the car was conducted by the law enforcement officers.

During the search of the parking lot, a drug dog alerted on Hunter Marner's car. The Plaintiffs have argued that the dog could have been alerting on an odor from a nearby car, and point to the testimony of Register that there was some discussion as to upon which car the dog had alerted. Register did not testify, however, that he witnessed the dog alert on any other car. The testimony of Palmer, the Bullock and Barbour County Drug Task Force Com-

mander, was unequivocal on this point. He testified that he observed the dog alert on Hunter Marner's car in an unusual manner two times. Steve Hanners of the Eufaula Police Department also testified that he witnessed the dog alert on Hunter Marner's car the second time.

While the Plaintiffs have argued that because no narcotics were found in the car, there is a question as to whether the dog actually alerted on the car, there was testimony from Ketchum that odors on or in the car can linger after the substance has gone. Other cars were alerted on by the dogs during the search which also contained no illegal narcotics, but which contained items such as a knife. David Dubose also testified that he asked at the scene whether the dog could have alerted on some empty sample medication packages he found in Hunter Marner's car and was told that it could have. The court finds the evidence to be overwhelmingly credible that the dog alerted on Hunter Marner's car.

After the dog alerted, police evidence tape was used to flag Hunter Marner's car. His tag number was then recorded and was run through the NCIC. Once the NCIC revealed that the owner of the car was Dr. Wesley Marner, Hunter Marner was called to the parking lot to unlock his car. Hunter Marner's car was subsequently searched. Palmer retrieved an exacto blade, which had been seen through the window before the search, from the console in the front of the car and handed it to Williams. In addition to the exacto knife in the front console, Ketchum found a large pocketknife in the pocket of a jacket in the backseat of the car.

The Code of Student Conduct of the Eufaula School Board includes among the major offenses possession of a weapon, defined as follows:

> Possession of weapons: (possession means on your person, in your property,

locker or vehicle) *Weapons include but are not limited to the following: ... Knife, irrespective of the blade length, or any other item that utilizes a razor blade or other blade, replacement or fixed, or metal fingernail file.*

Defendants' Exhibit 1 at page 14. The administrative options for such a major offense include immediate suspension, referral to law enforcement, investigation to see if expulsion is warranted, expulsion, and long term alternative school placement. *Id.* at page 16.

The principal of Eufaula High School, Gary Atkins ("Atkins"), suspended Hunter Marner from school for three days and required him to attend alternative school for 45 days at the beginning of the next school year as a result of the pocketknife and exacto blade which were found in his car. At trial, he explained that because there was no evidence that Hunter Marner had intended to harm anyone with the weapons, Atkins did not recommend that Hunter Marner be expelled by the school board. Atkins also testified that five other students whose cars were found to contain items such as a knife and a billy club were similarly given three days suspension and 45 days of alternative school.

The alternative school is in a separate facility. The principal of the alternative school, Williams, testified that students in alternative school complete the same class work, the same assignments, and the same tests as students in the classroom and receive grades. The alternative school was staffed by two certified teachers during the time in which Hunter Marner would have been assigned to it. Due to additional grant money, two retired certified teachers now also work half days at the alternative school. One of the teachers, Charles Kelly, who was at the alternative school in the Fall of 2001 was a certified math teacher. He testified at the trial

that when a student needed individual help working problems, he would take the student to a nearby computer lab and they would work problems on a grease board. He also testified that he would look at tests before the students in the alternative school took the tests and would determine what areas were being tested, then would work problems in those areas on the grease board in the computer lab.

Williams also testified that there are computer programs available which can assist in many areas including math and science. Students in the alternative school could also request assistance from the regular classroom teacher. Both Kelly and Williams testified that classroom teachers could be requested to come to the alternative school during their preparation periods.

Kelly further testified that he has been told by regular classroom teachers that students were farther along in math once they returned from the alternative school. Williams testified that one particular student enrolled in advanced placement classes who was assigned to the alternative school from April 1 until the end of the school year actually increased his grades in four subjects and maintained his A average in the remaining subject.

Although Hunter Marner testified at trial that no teachers are present at the alternative school, his experience there comes from a prior assignment to the alternative school when he was in the seventh grade [1] and a brief assignment during the exams period, presumably during which no instruction was given even in the regular classroom.

In contrast to the educational benefits provided by the alternative school, the disciplinary action of suspension means that

students receive zeros for any tests or other graded work given during the time they miss. Williams testified that one purpose of long term alternative school has been to decrease the drop-out rate, and that the program has had that effect. Suspension and alternative school are similar in that students assigned either form of discipline are not allowed to participate in extra-curricular activities.

Hunter Marner's step-father, Dr. Marner, was made aware of the search of Hunter Marner's car and came to the school to speak with Atkins. He reported to Atkins that the knife and the exacto blade were left in the car after Hunter Marner and Dr. Marner had repaired the rearview mirror of the car the previous night. Dr. Marner subsequently left a letter and other materials for the Eufaula City School Board superintendent, Dr. Susan L. Lockwood ("Dr. Lockwood"), to review. Dr. Lockwood and Dr. Marner later spoke at length on the telephone. On May 15, 2001, Dr. Marner attend a meeting of the Eufaula City School Board and was allowed to speak and to pass out packets on Hunter Marner's behalf. Dr. Marner requested a closed hearing, but his request was denied.

Hunter Marner served his three day suspension and took his final exams in the alternative school. He maintained his A average in the courses for which he took exams in the alternative school. Hunter Marner subsequently withdrew from Eufaula High School and currently attends Admiral Farragut Naval Academy in St. Petersburg, Florida. His plans for next year have not been finalized.

### Conclusions of Law

The Plaintiffs bring three claims including a claim for violation of substantive due

---

1. When Hunter Marner was assigned to the alternative school in the seventh grade, he

suffered no detrimental effect on his grades.

process, a claim for violation of procedural due process, and an unreasonable search claim. The court will address each of these in turn, beginning with the substantive due process claim.

### A. Substantive Due Process

■■ The Plaintiffs have argued that the Defendants acted arbitrarily and capriciously and thereby violated Hunter Marner's substantive due process rights. In *C.B. v. Driscoll*, 82 F.3d 383 (11th Cir. 1996), the Eleventh Circuit held that a student's substantive due process claim based on his suspension and transfer to an alternative school were foreclosed because the suspension and transfer were executive acts and the right infringed was not a fundamental right. *Id.* at 389. As the court reiterated in a subsequent decision, "because the decision to suspend a student is an executive act, any deprivation of the state-created right to attend school is protected only by the guarantee of procedural due process." *DeKalb Stone, Inc. v. County of DeKalb, Georgia,* 106 F.3d 956, 960 (11th Cir.1997). The executive act of transferring a student to an alternative school does not implicate substantive due process rights because the right to attend public school is not a right implicit in the concept of ordered liberty. *Hammock ex rel. Hammock v. Keys,* 93 F.Supp.2d 1222, 1230 (S.D.Ala.2000). Accordingly, judgment is due to be entered against the Plaintiffs and in favor of the Defendants on this claim[2].

### B. Procedural Due Process

■■ The Plaintiffs have argued that Hunter Marner was entitled to a full hearing before the school board could suspend him for three days and send him to alternative school for forty-five days. The Plaintiffs acknowledge that when a public school student is suspended for fewer than ten days, the only process due is oral or written notice of the charges, an explanation of the evidence the authorities have, and an opportunity to present the student's side. *See Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *C.B.,* 82 F.3d at 386. The Plaintiffs argue, however, that the forty-five days in alternative school amounted to a suspension, so that Hunter Marner was in essence suspended for forty-eight days.

The Eleventh Circuit stated in *C.B.* that the court doubted that C.B. had a property interest under Georgia law in attending the school he attended instead of the alternative school to which he was assigned. *C.B.,* 82 F.3d at 388 n. 5. In support of this statement, the Eleventh Circuit cited to a Tenth Circuit case for the proposition that, unless there is a showing that the alternative school is so inferior as to amount to an expulsion, the plaintiffs lack standing to challenge the discipline. *See id.* (*citing Zamora v. Pomeroy,* 639 F.2d 662, 670 (10th Cir.1981)). Relying in part on the Eleventh Circuit's decision, the Sixth Circuit has articulated the standard as being that assignment to an alternative school does not implicate due process rights unless there is a showing that the education received at the alternative school is significantly different from or inferior to the education received at the regular public school. *See Buchanan v. City of Bolivar, Tenn.,* 99 F.3d 1352, 1359 (6th Cir.1996). The Fifth Circuit has also held that a student transferred to one school from another for disciplinary reasons was not being denied access to public education and, therefore, had no standing to challenge the discipline. *Nevares v. San Marcos Con-*

---

**2.** Since substantive due process is not implicated in this case, there is no basis for the court to consider the Plaintiffs' contention that the discipline given was disproportionate to the offense committed.

*solidated Independent School District,* 111 F.3d 25, 26 (5th Cir.1997).

Some district courts have found sufficient standing to challenge reassignment where there was sufficient educational deprivation to warrant its being treated as the equivalent of a suspension. *Cole v. Newton Special Municipal Separate School District,* 676 F.Supp. 749 (S.D.Miss. 1987). Under this analysis, even though *Goss* minimal procedures would apply to an actual suspension period of less than nine days, more formal process would have to be afforded even for in-school detention if it exceeded nine days. *Id.* at 752. Another district court in the Fifth Circuit has similarly concluded that a punishment of three days suspension, five days assignment to an alternative school, exclusion from graduation ceremonies, and two letters of apology was sufficient to implicate property interests and invoke minimal due process protections. *Riggan v. Midland Independent School District,* 86 F.Supp.2d 647 (W.D.Tex.2000). That court reasoned that due process protections are required when the discipline imposed amounts to a deprivation of access to education. *Id.* at 655.

In this case, the standard alluded to by the Eleventh Circuit, that the alternative school must be so inferior as to amount to an expulsion from the educational system. *C.B.,* 82 F.3d 383 n. 5, simply has not been established by the evidence presented. The evidence regarding the alternative school, set forth more fully above, demonstrates that although no classical classroom instruction occurred at the alternative school, Hunter Marner would have been allowed to do his regular school work and to be graded as if he were in the regular classroom. Assistance would have been provided had it been sought. Al-

though the alternative school was in a separate location, the students assigned there are not in complete isolation, but are allowed one-on-one contact with certified teachers, and may receive assistance from their regular classroom teachers. There was no evidence presented that any student assigned to the alternative school suffered a detriment to his educational opportunities. In fact, the evidence was to the contrary, as specific examples were given of students who actually improved their grades while in the alternative school.

It may very well be that, in some instances, an alternative school assignment amounts to a deprivation such that full procedural due process is due. The evidence regarding the educational opportunities of the alternative school in this case, however, clearly demonstrates that the alternative school in the Eufaula city school system to which Hunter Marner was reassigned for 45 days would not have resulted in a sufficient educational deprivation to warrant treating the reassignment to the alternative school as the equivalent of a suspension.

■ While assignment to the alternative school, like suspension, means that a student cannot participate in extracurricular activities, such a deprivation does not implicate constitutional rights. "The privilege of participating in interscholastic activities must be deemed to fall ... outside the protection of due process." *Mitchell v. Louisiana High School Athletic Association,* 430 F.2d 1155, 1158 (5th Cir.1970)[3]; *see also Walsh v. Louisiana High School Athletic Association,* 616 F.2d 152, 159 (5th Cir.1980) ("A student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation rather than a constitutionally protected

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

claim of entitlement.") The court concludes, therefore, that judgment is due to be entered in favor of the Defendants on the procedural due process claim.

### C. Unreasonable Search

■ In *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the Supreme Court held that warrants are not required for school officials to effect a legal search, and that school officials need not have probable cause in the sense in which that term is ordinarily understood in the broader context of Fourth Amendment jurisprudence. *Id.* at 341, 105 S.Ct. 733. Rather, a search by school officials is justified if there are "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 342, 105 S.Ct. 733. In *Hearn v. Board of Public Education*, the Eleventh Circuit held that the "alerting of a drug-sniffing dog to a person's property supplies not only reasonable suspicion, but probable cause to search that property." *Hearn v. The Board of Public Education*, 191 F.3d 1329, 1333 (11th Cir.1999). When the property alerted to is in a vehicle, the vehicle can be searched immediately without resort to a warrant. *Id.*

The Plaintiff's Fourth Amendment unreasonable search claim is based on the contention that the drug-sniffing dog did not alert on Hunter Marner's car, but a car near it. No real evidence was presented to this effect, however. Only Register of the Eufaula Police Department testified that there was a comment made about whether a dog had alerted on Hunter Marner's car. The overwhelmingly credible evidence, as set out above, however, was that the dog indeed alerted on Hunter Marner's car. Consequently, there was an adequate legal basis to search the car, and Hunter Marner's Fourth Amendment rights were not violated. Judgment is due to be entered in favor of the Defendants on this claim.[4]

### CONCLUSION

The court is sympathetic to Hunter Marner's fear, which may prove to be unfounded,[5] that his future prospects will be affected by the punishment he has received, but the Defendants in this case simply cannot be held at fault under any of the guarantees of the Constitution of the United States for implementing their evenhanded policy in an effort to ensure the safety of students in their school system. Although the court has concluded that the Plaintiffs' claims in this case are unavailing, it is the court's sincere hope that Hunter Marner will continue to excel in his academic career.

A separate Judgment will be entered in accordance with these findings of fact and conclusions of law.

### ORDER AND JUDGMENT

Based on the Findings of Fact and Conclusions of Law entered by the court on this day, the court finds in favor of the Defendants, and judgment is hereby entered in favor of the Defendants, the Eufaula City Schools Board, Susan L. Lockwood in her official capacity as Superintendent of the Eufaula City School Board; Gary Atkins in his official capacity as principal of Eufaula High School; and Janis Biggers, Jimmy S. Calton, Sr., Louise Conner, Otis Hill, and James Lockwood in their official capacities as

---

4. Because no unreasonable search or seizure occurred, the court need not reach the issue of whether evidence illegally seized can be used in a school disciplinary proceeding.

5. There was testimony at trial that school officials were not aware of any request for disciplinary records on Hunter Marner during a pre-application to the Naval Academy.

members of the Eufaula City School Board, and against the Plaintiffs, Hunter Marner, a minor, by and through his mother and next friend, Wanda Marie Marner.

Costs are taxed against the Plaintiffs.