PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 94-8494
_____

D. C. Docket No. 3:91-00136-CA-ATH (DF)

C. B., a minor, by and through his father and
next of friend, William J. Breeding, Jr.; T.
P., a minor, by and through her mother and
next of friend, Shirley Paschall,

Plaintiffs-Appellants,

versus

SANDRA DRISCOLL, Principal, individually and
in her official capacity; EDWARD E. CORRY,
Superintendent, individually and in his
official capacity; GREENE COUNTY BOARD OF
EDUCATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

**(April 18, 1996)**

Before EDMONDSON and BIRCH, Circuit Judges, and HENDERSON, Senior
Circuit Judge.

**EDMONDSON, Circuit Judge:**

Plaintiffs in this action, minors TP and CB, sued their former high

school principal, Dr. Driscoll, and superintendent, Mr. Corry, in

Defendants' individual and official capacities under 42 U.S.C. § 1983.  The

claims asserted were for constitutional injuries allegedly suffered when Defendants suspended Plaintiffs from school. The district court granted summary judgment to Defendants. And, in the light of the exceedingly limited rights of public school students facing school discipline, we affirm.

## I. Facts

TP was involved in a fight at the Greene-Taliaferro Comprehensive High School, where she was a student. According to school administrators, TP refused to calm down when teachers arrived, attempted again to attack the other student, and screamed obscenities and threats. A teacher eventually carried her to the principal's office, where TP continued to shout obscenities and to disobey the school administrators' instructions to remain seated and to wait quietly. Dr. Driscoll also says -- without contradiction -- that TP injured her as administrators tried to calm TP in the principal's office. The police were summoned, and TP was taken to the station. From there, she called her mother, who retrieved her.

TP and her mother discussed the incident later that same day with Dr. Driscoll by phone. TP told Dr. Driscoll that the other student had started the fight. She claims, however, that Driscoll was uninterested in her story, and TP argues that the decision to suspend her had already been made. Dr.

Driscoll is herself unsure whether the decision to suspend TP was made before or after the phone conversation.

School policy authorizes administrators to suspend students up to nine days following a conference; longer suspensions and expulsions require that the Board of Education first hold a more formal hearing. Superintendent Corry explained to TP's mother that TP was entitled to no formal hearing. TP then enrolled in a neighboring school district and filed this lawsuit.

About a week after the TP incident, Assistant Principal Johnson was told by a student that CB was going to make a drug sale at school later in the day. The informant had been told by another student that CB had hidden the drugs in CB's coat. In response, Driscoll and Johnson went to CB's class, asked him to follow them to the hallway, and informed him that it had been reported that he was in possession of drugs. They asked CB to empty his pockets, and CB removed from his coat two plastic packets of what appeared to be marijuana. CB maintained he knew nothing about the packets. Dr. Driscoll permitted CB to return to class. At a conference attended by CB's grandparents, CB was given a chance to explain the source of the packets. Dr. Driscoll told CB that the police would test the substance and that she would continue investigating. She did not suspend him then.

The next week CB's father, stepmother, grandmother and aunt (who is also CB's attorney before this Court) attended a meeting with Driscoll and a Georgia Bureau of Investigation agent where CB was given the opportunity to explain himself again. Dr. Driscoll decided to suspend CB for nine days for the possession of a "look-alike" illegal substance. After the suspension, Driscoll decided that CB would -- pending the outcome of the drug testing -- be assigned to the "alternative school" where CB would do work assigned by the regular teachers, but would not attend regular classes. CB then withdrew from school and filed this lawsuit. Later, tests revealed the substance not to be marijuana.

The school handbook permits administrators to search the personal effects of students when administrators reasonably suspect that the search will reveal evidence of a violation of law or school rules. Possession of both illegal drugs and substances that appear to be illegal drugs are prohibited by School Rule 23. CB admitted in his deposition that he was aware of the rules against illegal drugs, including the prohibition against "look-alikes." Everyone concedes the packets looked to contain marijuana.

Review of summary judgment is plenary; and this court will affirm if, after construing the evidence in the light most favorable to the non-moving party, it concludes that no genuine issue exists on a material fact and that the moving party is entitled to judgment as a matter of law. Delancey v. St. Paul Fire and Marine Insurance Co., 947 F.2d 1536 (11th Cir. 1991).

## II. TP's Due Process Claims

### A. *Procedural Due Process*

TP argues that her suspension for fighting, screaming obscenities, and refusing to cooperate with and assaulting faculty members was imposed with inadequate process. She says she received no notice or hearing and alleges the decision to suspend was made before the phone conference.[1]

The Supreme Court determined in <u>Goss v. Lopez</u>, 419 U.S. 565, 577, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975), that the Fourteenth Amendment is implicated in school suspension decisions when a state provides an entitlement to a public education. But, the characterization of what process is due in the academic setting was strikingly tempered by the Court's recognition that "[j]udicial interposition in the operation of the public school system . . . raises problems requiring care and restraint." <u>Id.</u> (citations and internal quotation marks omitted). Therefore, when a student is suspended for fewer than ten days, the process provided need consist only of "oral or written notice of the charges against him and, if he denies them, an

---

[1]The district court originally determined that factual issues required a jury trial on the question of when (and if) TP's hearing was provided; but on reconsideration, the court held that TP received a hearing during the phone conversation between TP and Dr. Driscoll that satisfied due process regardless of whether or not it preceded the decision to suspend.

explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 582, 95 S.Ct. at 740.

The dictates of Goss are clear and extremely limited: Briefly stated, once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands. The only other requirement arises from the Court's admonishment that the hearing come before removal from school "as a general rule," unless a student's continued presence is dangerous or disruptive. In these instances, removal can be immediate. Id.

When TP was removed from school, she posed a danger to persons or property or both and was disruptive. After fighting with two girls, she had had to be physically carried to the principal's office by a teacher; and while the details of what followed are contested, TP admits she was emotionally distraught and that she expressed to administrators her intention to "kill that girl" who had allegedly attacked her. She also admits that she refused to stay seated in the office and tried to run out of the office. Dr. Driscoll says (without contradiction) that she was injured in the attempts to calm TP in Driscoll's office. So, TP was first properly removed from school under the circumstances even if she was given no opportunity to explain herself. The important issue is whether she had the chance to explain her behavior before the decision setting the duration of the

suspension -- nine days -- became final.

Appellees assert that TP received her hearing by telephone later that day, when TP's mother phoned Dr. Driscoll at school. TP and her mother both took part in that call.[2] Dr. Driscoll admits that she cannot recall whether the initial decision to suspend was reached before or after that call.

Despite this uncertainty, Appellees are still correct that the phone call satisfied the requirements of the due process clause. This court had occasion to consider, shortly after Goss, the issue of whether a hearing held after a suspension decision has been announced, but in time to modify or to reverse the decision, satisfies due process. In Sweet v. Childs, 518 F.2d 320, 321 (5th Cir. 1975), the student plaintiffs were removed from school because they were causing a disruption. Later that day, an announcement was made over local radio that they had been suspended. Shortly thereafter, in a "post-suspension student-parent conference[]," the students were allowed to air their views; and the suspensions were reversed. Id. Applying Goss, the court found no deprivation of due process.

Sweet teaches that when students are removed from school for creating a disturbance, a tentative decision to continue to suspend the students for some days may be made before a hearing as long as the disciplinarian goes on to hold a prompt -- given the practicalities -- hearing

_____

[2]Appellees do not argue that TP received a sufficient hearing in the principal's office, and therefore we do not consider this idea.

at which the preliminary decision to suspend can be reversed. Here, TP acknowledged in her deposition that, within hours of leaving school, she was able to tell her side of the story to Dr. Driscoll on the phone: "I said [to Dr. Driscoll], no we were not fighting . . . . [T]hese girls jumped on me, and her sister was holding me." TP also told Dr. Driscoll her attacker jumped on her "for no reason." Dr. Driscoll then declined to alter the punishment. Under Sweet, that the hearing did not precede the initial determination of TP's punishment is not dispositive on whether due process was afforded. Therefore, because TP was apprised of the charges against her, and Dr. Driscoll soon heard TP's version of the morning's events, TP -- given the circumstances -- received sufficient process under Goss.

*B. Substantive Due Process*

TP claims that the procedural due process violation discussed above also constituted a violation of what the Supreme Court has called substantive due process: she says the nine-day suspension caused her injury of a "shocking and abusive nature." And, TP argues her substantive due process rights were violated because Driscoll, who made the decision to suspend, was biased because TP injured Driscoll in the struggle in the principal's office following TP's fight with other students.

These substantive due process claims are without merit. Pursuant to this court's opinion in McKinney v. Pate, 20 F.3d 1550, 1557 n.9 (11th Cir.

8

1994) (en banc), the decision to suspend TP for nine days is an executive decision. As an executive act, the suspension contravenes substantive due process rights only if, in the Supreme Court's words, the right affected is "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937), overruled on other grounds by Benton v. Maryland, 395 U.S. 784, 793, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). See also McKinney, 20 F.3d at 1556 (noting strong presumption against discovering substantive due process protection for unenumerated rights). The right to attend a public school is a state-created, rather than a fundamental, right for the purposes of the substantive due process clause. See Plyler v. Doe, 457 U.S. 202, 221, 102 S.Ct. 2382, 2396, 72 L.Ed.2D 786 (1982) (noting that though it is societally important, "[p]ublic education is not a 'right' granted to individuals by the Constitution") (citations omitted).

Therefore, the "right" to avoid school suspension may be abridged as long as proper procedural protections are afforded; and TP's substantive due process challenge must fail. By the way, TP's quarrel with Driscoll's supposed bias is also properly seen as an alleged deprivation of procedural, not substantive, due process. McKinney, 20 F.3d at 1560-61. Thus, TP's effort to invoke substantive due process fails.[3]

---

[3]We note that Driscoll's alleged bias amounts to no deprivation of procedural due process either. In the school context, it is both impossible and undesirable for administrators involved in incidents of misbehavior always to be precluded from acting as decisionmakers. Thus Justice White noted in Goss, 419 U.S. at 584, 95 S.Ct. at 741, that as long as the "informal give-and-take" occurs, a disciplinarian who has witnessed the conduct at issue can suspend a student on the spot. And in an

### III. CB's Fourth and Fourteenth Amendment Claims

#### A. Illegal Search and Seizure

CB argues that Driscoll lacked reasonable grounds to search him because no administrator observed him with drugs, no administrator observed him acting strangely, and the informant was unreliable. Whether the facts construed in favor of CB show that Driscoll had reasonable grounds to suspect the presence of banned substances is a question of law and review is de novo. See United States v. Harris, 928 F.2d 1113 (11th Cir. 1991). We hold that the search of a student in the instant circumstances does not violate the Fourth Amendment, and therefore we need not consider issues of qualified immunity and of local government liability.

In New Jersey v. T.L.O., 469 U.S. 325, 342, 105 S.Ct. 733, 743, 83 L.Ed.2d 720 (1985), the Supreme Court held that school officials need only "reasonable grounds for suspecting" that a search will turn up evidence that the student has violated either the law or school rules. "Sufficient

---

analogous situation, we have written that "in the case of an employment termination . . . due process does not require the state to provide an impartial decisionmaker at the pre-termination hearing," McKinney, 20 F.3d at 1562 (citing Parratt v. Taylor, 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981) (citations and internal quotation marks omitted). The reasoning is that often the supervisor will participate in events preceding termination, and thus always requiring an impartial decisionmaker to be educated on the facts would render the required processes too complex. See, e.g., Schaper v. City of Huntsville, 813 F.2d 709, 715 n.7 (5th Cir. 1987) (citations omitted). This reasoning applies with at least equal force in the school suspension context. Even if Driscoll was not wholly impartial, we conclude as a matter of law that Driscoll's involvement in the events in the office did not preclude her from acting as the decisionmaker.

probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." T.L.O., 469 U.S. at 346, 105 S.Ct. at 745 (citations and internal quotation marks omitted). The tip in this case provided sufficient probability, viewed against the "reasonable grounds" standard, to justify the search here.

A fellow student provided the information that CB carried drugs with the intent of selling them. The tip was provided to administrators directly, rather than anonymously, and was thus more likely to be reliable because the student informant faced the possibility of disciplinary repercussions if the information was misleading. Cf. United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 2082 (1971) (plurality opinion) (stating "common sense" proposition that tip that places informant at risk of prosecution is entitled to greater credit). Many courts have approved reliance on tips from fellow students. E.g., S.C. v. State, 583 So. 2d 188, 192 (Miss. 1991) (noting that tips from students are less suspect than those from society in general). And while the tip did not include the identity of the student who observed the contraband firsthand, the Supreme Court has recognized that information from an anonymous source can help provide the "reasonable suspicion" necessary for a Terry stop. See Alabama v. White, 496 U.S. 325, 331, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). Administrators also received at least some corroboration when they noted that CB, who was reported by the informant to have the drugs in his "big old coat," did in fact

have such a coat in his possession when the search was initiated. <u>See</u> <u>United States v. Gibson</u>, 64 F.3d 617, 623 (11th Cir. 1995) (holding that anonymous tip can be corroborated by verifying that present circumstances, rather than future acts, are as reported), <u>petition for cert. filed</u>, No. 95-8439 (Mar. 26, 1996). In the light of the circumstances, reasonable grounds to search existed; and CB's Fourth Amendment rights were not violated.

## B. Procedural Due Process

CB also argues that his procedural due process rights were violated because he was suspended without adequate notice or hearing. The District Court granted summary judgment on the merits of this claim. Again, only a "rudimentary" hearing is required for short-term suspensions. <u>Goss</u>, 419 U.S. at 581, 95 S.Ct. at 740. Here CB had two opportunities to discuss the issue with administrators before he was suspended, either one of which more than satisfied <u>Goss</u>. (CB was in fact represented by counsel at the second hearing.)[4]

## C. Substantive Due Process

---

[4]CB also fails to set out a persuasive procedural due process claim based on the alleged vagueness of Rule 23 (possession of look-alike substances). <u>See</u>, <u>e.g.</u>, <u>Bethel Sch. Dist. No. 403 v. Fraser</u>, 478 U.S. 675, 686, 106 S.Ct. 3159, 3166, 92 L.Ed.2d 549 (1986) (stating that "school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions"). Rule 23 was sufficiently clear as not to deny CB the process he was due.

CB claims his substantive due process rights were violated by the decision to suspend him and then to send him to an "alternative school." The district court granted summary judgment on the merits of this claim.

Our holding in McKinney, 20 F.3d at 1560-61, forecloses CB's substantive due process claim for his suspension and transfer. As discussed above, McKinney reminded us that executive acts warrant no substantive due process protection unless the right infringed is recognized by the Constitution as "fundamental," which is to say that "our democratic society and its inherent freedoms would be lost if that right were to be violated." Id. at 1561 (citing Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979)). CB's suspension and transfer were both executive acts, see McKinney, 20 F.3d at 1557 n.9, and neither abridged a fundamental right. Plyler, supra. Because the right to an education is state-created, that right can be restricted as long as adequate procedures are followed. McKinney, 20 F.3d at 1561.[5] Thus, what

---

[5]And, although we need not address the issue (because CB has not alleged a violation of procedural due process based on the transfer), we doubt CB has a property interest under Georgia law in attending Greene-Taliaferro instead of the alternative school to which he was assigned. See generally Doe v. Bagan, 41 F.3d 571, 576 (10th Cir. 1994). In Bagan, the court stated,

> It is obvious, however, that Doe was not denied his right to public education. He was only denied his request to attend the public school of his choice. Plaintiffs cite no Colorado authority, and we have found none, indicating that the right to a public education encompasses a right to choose one's particular school.

Id. Cf. Zamora v. Pomeroy, 639 F.2d 662, 670 (10th Cir. 1981) (holding that, at least absent showing that alternative school was "so inferior [to previous school as] to amount to an expulsion from the educational system," the plaintiffs "lack the requisite standing to attack the appellees' actions"). In any event, CB clearly received all the process that was due.

the Supreme Court has identified as substantive due process was not offended by the suspension and transfer.

## IV. Plaintiffs' Other Motions Below

The district court dismissed Plaintiffs' other pending motions as moot because he ruled on the summary judgment motion first. In the light of our holdings expressed above, we decline to review the merits of these motions.

The judgment of the district court is AFFIRMED.