Kelly PHANEUF, Plaintiff,

v.

Rose Marie CIPRIANO, Dorene M. Frai-kin, Kathleen Binkowski, Town of Plainville, and Plainville Board of Ed-ucation, Defendants.

Civil No. 3:03CV00372(AVC).

United States District Court, D. Connecticut.

July 29, 2004.

to a strip search without reasonable cause to do so.

The defendants have filed the within motion for summary judgment pursuant to Fed.R.Civ.P. 56(c), arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. The issues presented are: 1) whether the strip search in issue was reasonable in its cause and scope; 2) if the search was not reasonable, whether the defendants are entitled to qualified immunity as government actors; and, if summary judgment is granted on the plaintiff's federal law cause of action, should the court consider: 3) whether the defendants are entitled to governmental immunity with respect to the plaintiff's state law causes of action; and, 4) whether the plaintiff has presented sufficient evidence of intentional infliction of emotional distress and invasion of privacy.

For the reasons that hereafter follow, the court concludes that: 1) the strip search conducted on the plaintiff was reasonable; 2) since the search was reasonable, there is no need to consider whether the defendants are entitled to governmental immunity; 3) since summary judgment is granted on the plaintiff's federal law causes of action, the court will not consider the plaintiff's state law causes of action.

The defendants' motion for summary judgment (document no. 20) is therefore GRANTED.

John M. Gesmonde, Sheila J. Hanley, Gesmonde, Pietresimone, Sgrignari, Pinkus & Sachs, Hamden, CT, for Plaintiff.

James G. Williams, Michael Francis O'Connor, Williams Walsh & O'Connor LLC, North Haven, CT, for Defendants.

## RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COVELLO, District Judge.

This is an action for damages alleging violations of the Fourth Amendment to the United States Constitution. It is brought pursuant to 42 U.S.C. § 1983 and common law tenets concerning intentional infliction of emotional distress. The plaintiff, Kelly Phaneuf, alleges that the defendants, Plainville High School Principal Rose Marie Cipriano, Plainville High School substitute nurse Dorene Fraikin, Superintendent of Plainville Public Schools Kathleen Binkowski, the Plainville Board of Education and the Town of Plainville, subjected her

## FACTS

Examination of the complaint, affidavits, declarations, pleading, Local Rule 56(a) statements, and exhibits accompanying the motion for summary judgment, and the responses thereto, disclose the following undisputed material facts.

On June 7, 2002, the seniors at Plainville High School were to attend their senior

class picnic at an off-campus location. Prior to departure, various teachers checked each student's bag for security purposes. One Mrs. Nuzzillilo, a teacher at Plainville High School, checked the plaintiff Kelly Phaneuf's bag.

A student, one Michele Cyr, reported to Cindy Birdsall, a teacher at Plainville High School, that Kelly Phaneuf had informed Cyr and several other students prior to the bag check that she possessed marijuana. Cyr reported that Phaneuf told the students she planned to hide the substance in her pants during the mandatory bag check. Birdsall conveyed this information as stated to her to the Plainville high school principal, the defendant, Rose Marie Cipriano. Cipriano considered Cyr's report trustworthy because Cyr worked closely with school staff as an office aid in the high school. Phaneuf, meanwhile, had a history of disciplinary problems.

Cipriano boarded the bus on which Kelly Phaneuf sat and asked Phaneuf to disembark and to follow her. She and Birdsall led Phaneuf to the nurse's office while explaining to her that a fellow classmate had informed them that Phaneuf possessed marijuana. Phaneuf denied the allegation in a manner that made both Cipriano and Birdsall believe she was lying. Once at the nurse's office, Cipriano informed the substitute nurse, the defendant Dorene Fraikin, that she must conduct a strip search of Phaneuf's underpants. Cipriano ordered Fraikin to specifically "open and check" that area. When Fraikin expressed apprehension in conducting the search herself, Fraikin and Cipriano called Phaneuf's mother, Lisa Phaneuf. They requested that she come to the school to conduct a strip search of her daughter's person for the possible possession of marijuana.

Cipriano then conducted a search of Kelly Phaneuf's bag. She found cigarettes and a lighter. Possession of these items on school grounds violated school rules.

When Lisa Phaneuf arrived at the school, Cipriano instructed her to conduct a strip search of her daughter's pants. She did not order her to search Kelly's shirt. Lisa conducted the search in a small room while substitute nurse Fraikin stood behind her. A closed curtain separated the doorway of the room from the common area. During the search Kelly Phaneuf lifted up her shirt and pulled down her bra to show that nothing was tucked in either of these two articles of clothing. She then dropped her skirt to the floor. Lisa Phaneuf asked Fraikin if that was enough, and Fraikin answered that it was not. Kelly then pulled her underpants away from her body to show that there was no marijuana in her underpants. Fraikin maintains that she turned away and did not watch the search. On the other hand, Kelly Phaneuf maintains that Fraikin watched the search.

The search did not reveal marijuana or any other illegal substance. Lisa Phaneuf drove her daughter home. Lisa later drove Kelly back to the school, and Cipriano gave Kelly a ride to her senior picnic.

On January 31, 2003, Kelly Phaneuf filed a complaint in Connecticut superior court. On March 3, 2003, the defendants filed a notice of removal to the United States District Court for the District of Connecticut. On March 17, 2004, the defendants filed the present motion for summary judgment.

## STANDARD

On a motion for summary judgment, the moving party must show that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991).

In opposing a motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of [its] pleading," but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56; *see D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(d). "[T]he mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment." *Zigmund v. Foster*, 106 F.Supp.2d 352, 356 (D.Conn.2000) (citations and quotation marks omitted).

Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to avoid the entry of summary judgment against the non-moving party]; there must be evidence on when the jury could reasonable find for the [non-moving] party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### I. Fourth Amendment Causes of Action

The defendants first argue that the search conducted upon Kelly Phaneuf's person was reasonable. Specifically, they maintain that considering the totality of the circumstances, there was reasonable suspicion to believe a search would reveal the possession of marijuana.

Kelly Phaneuf responds that the search was not reasonable. Specifically, she claims that there was not individualized suspicion to believe that she carried marijuana on her person on the day of the search.

In *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), a high school teacher caught two girls smoking in the school lavatory. He brought the girls to the assistant principal, Theodore Choplick. One of the girls, T.L.O., denied that she had been smoking and claimed that she did not smoke at all. *New Jersey v. T.L.O.*, 469 U.S. 325, 328, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). Choplick opened T.L.O.'s purse and found a package of cigarettes. He also noticed a package of cigarette rolling papers, which were associated with the use of marijuana. Choplick proceeded to search the purse thoroughly and found a small amount of marijuana, instruments employed in the use and sale of marijuana, a substantial quantity of money, and letters implicating T.L.O. as a drug dealer. *Id.* T.L.O.'s mother took her to police headquarters, where she confessed to selling marijuana. *Id.* at 329, 105 S.Ct. 733. New Jersey brought charges, and T.L.O. moved to suppress the evidence on the grounds that Choplick's search of her purse violated the Fourth Amendment. The court denied the motion to suppress on the grounds that school officials may conduct a search if there is reasonable suspicion of a crime. *Id.*

The New Jersey Appellate Court affirmed the judgment. *T.L.O.*, 469 U.S. at 330, 105 S.Ct. 733. The Supreme Court of New Jersey reversed and ordered the suppression of the evidence found in T.L.O.'s

purse. *Id.* at 331, 105 S.Ct. 733. That court agreed that a school official can conduct a warrantless search on reasonable grounds of suspicion but found the search of T.L.O.'s purse to be unreasonable because the possession of cigarettes did not necessarily mean that T.L.O. violated the rules by smoking them. *Id.* Choplick had no specific information that there were cigarettes in her purse, and the evidence of drug use Choplick saw did not justify extensive rummaging through T.L.O.'s papers. *New Jersey v. T.L.O.*, 469 U.S. 325, 331, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

The United States Supreme Court held that the search did not violate Fourth Amendment standards. *T.L.O.*, 469 U.S. at 333, 105 S.Ct. 733. The Supreme Court held that the Fourth Amendment's prohibitions on unreasonable searches and seizures did apply to searches conducted by public school officials. *Id.* at 337, 105 S.Ct. 733. However,

> the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.

*Id.* at 341, 105 S.Ct. 733.

██ Using the *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967), standard, the Supreme Court ruled that when considering the reasonableness of a search in school, a court must consider whether the action was reasonable at its inception and was reasonably related in scope to the circumstances which justified the interference in the first place. *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The Supreme Court conceded that the standard of reasonable suspicion is not substantially different from the standard of reasonable grounds used by the New Jersey Supreme Court. *New Jersey v. T.L.O.*, 469 U.S. 325, 343, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). However, the Court found that the search for cigarettes in T.L.O.'s purse was reasonable because such evidence would impeach T.L.O.'s statement that she did not smoke at all. *Id.* at 345, 105 S.Ct. 733. "[T]he requirement of reasonable suspicion is not a requirement of absolute certainty but only of sufficient probability." *Id.* at 346, 105 S.Ct. 733. Once Choplick found the rolling papers, he had reasonable suspicion to believe that T.L.O. was also carrying marijuana. Finding each bit of additional evidence justified Choplick's further search for more evidence of T.L.O.'s illegal activities. *Id.* at 347, 105 S.Ct. 733.

██ The reasonableness of a strip search of a student by public school administrators is subject to higher scrutiny than a search of a student's possessions. "What may constitute reasonable suspicion for a search of a locker or even a pocket or pocketbook may fall well short of reasonableness for a nude search." *Cornfield By Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1321 (7th Cir. 1993).

*Reasonableness at the inception of the search.*

The defendants first argue that the search was justified at its inception because they had reasonable suspicion to believe that a search of Kelly Phaneuf's person would turn up evidence that she was violating the law. Specifically, the defendants claim that the specific tip coming from a reliable student combined with Cipriano's and Birdsall's subjective impres-

sion that Phanuef was lying, Phanuef's past disciplinary problems, and the discovery of lighter and cigarettes in Phaneuf's belongings gave the defendants reasonable suspicion to believe that Phaneuf had placed marijuana down her pants.

Kelly Phaneuf responds that the search was not justified at its inception because the defendants lacked individualized suspicion. Specifically, she responds that the tip from a teacher, Ms. Birdsall, based on the secondhand information from the student Cyr, does not amount to individualized suspicion that she might have marijuana on her person. She also responds that the accusation should have been suspect, being that it was the type of accusation that could lead to a highly invasive search, and Phaneuf had already been subjected to a bag search.

█ "[W]hether any given search was justified at its inception must be adjudged according to the circumstances existing at the moment that particular search began." *DesRoches by DesRoches v. Caprio*, 156 F.3d 571, 577 (4th Cir.1998). In other words, in determining the reasonableness of the strip search, a court does not look at the circumstances at the moment the defendants first announced their intention to perform a strip search. *DesRoches by DesRoches v. Caprio*, 156 F.3d 571, 577 (4th Cir.1998). Rather, the court looks at the circumstances as they existed at the moment the defendants performed the strip search. *Id.* at 578. Such circumstances include the quality of the tip, *see C.B. By and Through Breeding v. Driscoll*, 82 F.3d 383 (11th Cir.1996); *Williams by Williams v. Ellington*, 936 F.2d 881 (6th Cir.1991), the subjective suspicion of a teacher's observations, *see Cornfield By Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316 (7th Cir.1993), and the student's past disciplinary problems. *See Cornfield*, 991 F.2d at 1323; *Williams*, 936 F.2d at 887.

In *C.B. By and Through Breeding v. Driscoll*, 82 F.3d 383 (11th Cir.1996). a student informant had been told by another student that plaintiff C.B. had drugs in his possession and planned to execute a drug sale later that day. *Id.* at 385. The school principal accepted the student informant's information, retrieved the student from class, and asked the student to empty his pockets. *Id.* The court held that the search of the student's coat pockets based only by the tip of another student did not violate the Fourth Amendment under the circumstances. *Id.* at 388. The court cited that the tip was not anonymous and was corroborated with a description of the coat in which the drugs were reported and were found. *C.B. By and Through Breeding v. Driscoll*, 82 F.3d 383, 388 (11th Cir.1996). "The tip in this case provided sufficient probability, viewed against the 'reasonable grounds' standard, to justify the search here." *Id.*

In *Williams by Williams v. Ellington*, 936 F.2d 881 (6th Cir.1991), a student informed the high school principal, Ellington, that two fellow students possessed drugs and had offered some to her. *Id.* at 882. The informant had made the same complaint against the same students previously. A teacher corroborated the accusation when she reported that one of the accused students behaved strangely that day. *Id.* The teacher had also found a note under one of the accused students' desks during the previous semester that referred to a party and the use of a "rich man's drug". *Id.* Upon questioning, one student produced a vial of illegal drugs. *Id.* at 883. The other student, Williams, insisted she did not possess drugs. The Assistant Principal first searched Williams' locker and purse but found nothing. *Id.* Ellington then requested a search of Williams' person, which also did not produce evidence of drugs. *Id.* The court found the strip search to be reasonable

based on the events that occurred during the week leading up to the search. *Williams by Williams v. Ellington,* 936 F.2d 881, 887 (6th Cir.1991). "Like *T.L.O.,* after Ellington's initial suspicions were raised, new evidence appeared to justify the extended level of intrusion." *Id.; see also Singleton v. Board of Educ. USD 500,* 894 F.Supp. 386 (D.Kan.1995) (accusation by an adult provided reasonable suspicion for the strip search of a student).

In *Cornfield By Lewis v. Consol. High Sch. Dist. No. 230,* 991 F.2d 1316 (7th Cir.1993), a teacher searched a male student after the teacher observed an unusual bulge in the crotch area of the student's sweatpants. *Id.* at 1319. The student had a wide array of previous suspicions of drug use against him. *Id.* at 1322. The court found that the "cumulative effect of [the events leading up to the search] is sufficient to create a reasonable suspicion that Cornfield was crotching drugs," which justified the search. *Id.* at 1323; *see also Widener v. Frye,* 809 F.Supp. 35 (S.D.Ohio 1992) (the smell of marijuana around a student and his lethargic actions justified a strip search).

■ Applying these principles, the court concludes that the search conducted of Kelly Phaneuf's person was justified at its inception. At the inception of the search, the school administrators had a tip from a reliable student that was specific as to the type of illegal substance and specific as to its location. School administration also knew of Phaneuf's past disciplinary problems and observed Phaneuf's suspicious denial of the accusation. The tip combined with the other evidence gave the school administration reasonable suspicion to re-check Kelly Phaneuf's bag. *See C.B. By and Through Breeding v. Driscoll,* 82 F.3d 383, 388 (11th Cir.1996) (a tip from a fellow student justified a search of a student's coat pockets). Once defendant Cipriano found the cigarettes and lighter in Kelly's purse, she had a higher level of suspicion that Kelly could also be carrying contraband on her person. The heightened level of suspicion justified the extended level of intrusion necessary to conduct a search of Kelly Phaneuf's person for evidence of drug possession in school.

Kelly Phaneuf relies on *Fewless Ex Rel. Fewless v. Board of Educ. Of Wayland,* 208 F.Supp.2d 806 (W.D.Mich.2002), in support of the proposition that the search was not reasonable. However, that case is distinguishable from the current facts in a number of significant ways. In that case, four students informed school administration *en masse* that plaintiff Fewless possessed marijuana. *Id.* at 809. Three of the four student informants were to serve detention and pay restitution for destroying Fewless's school project. When questioned, Fewless turned in to school administration a lighter he had in his possession. *Fewless Ex Rel. Fewless v. Board of Educ. Of Wayland,* 208 F.Supp.2d 806, 809 (W.D.Mich.2002). When a search of Fewless's bag and pockets did not reveal marijuana, two students, who were scheduled to serve detention for harassing Fewless, reported that Fewless claimed to them that he hid marijuana down his "butt crack." *Id.* at 810. The assistant principal and security person then conducted a strip search of Fewless. *Id.* at 811. Fewless did not have any previous history of involvement with drugs at the school. *Id.* at 812. The search was found to be unreasonable, as the defendants did not question the clearly possible ulterior motives of the informants. *Id.* at 816–17.

Although Kelly Phaneuf argues that malice motivated the accusation against her, which warranted the same level of suspicion used by the district court in *Fewless,* 208 F.Supp.2d 806 (W.D.Mich.2002), she has not produced any evidence of malice or an ulterior motive of the informant.

Based on the evidence on record, Michele Cyr had no reason to harass Kelly Phanuef. Because the facts at hand lack the suspicious veracity present in *Fewless*, *Fewless* is inapposite.

*Reasonableness in Scope of the Search*

■ The defendants argue that the manner of the search was not excessively intrusive in light of the age and sex of the plaintiff and the nature of the infraction. Specifically, they maintain that it was not intrusive because the student's mother conducted the search. They assert that the female nurse stood with her back to Kelly, and the plaintiff was not required to completely remove her clothing. They maintain the search was reasonably related to the objective of uncovering the suspected drug. Finally, they maintain that the nature of the concern is such that the principal's suspicions warranted a search for the sake of the students.

Phaneuf responds that the search was excessively intrusive in light of her age and sex and the nature of the infraction. Specifically, she responds that the search went beyond that required by the information against her because it included the removal of her shirt and bra. Phaneuf also asserts that Fraikin inspected her person and watched her mother inspect her person.

The Supreme Court in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) held that "[A] search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342, 105 S.Ct. 733. "A nude search of a student by an administrator or teacher of the opposite sex would obviously violate [the excessively intrusive] standard. Moreover, a highly intrusive search in response to a minor infraction would similarly not comport with the slid-

ing scale advocated by the Supreme Court in *T.L.O.*" *Cornfield By Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir.1993). However, the Supreme Court does not consider excessively intrusive to mean the least intrusive. "[T]his Court has repeatedly stated that reasonableness under the Fourth Amendment does not require employing the least intrusive means, because the logic of such elaborate less-restrictive-alternative arguments could raise insuperable barriers to the exercise of virtually all search-and-seizure powers." *Board of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie City v. Earls*, 536 U.S. 822, 837, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002) (internal citations and quotation marks omitted).

Other circuit courts have considered the scope of a strip search to be reasonable when the search is conducted by members of the same sex and only extends as far as necessary to satisfy the reasonable suspicion. The Sixth Circuit upheld the reasonableness in scope of a strip search of a female student in *Williams by Williams v. Ellington*, 936 F.2d 881, 884 (6th Cir.1991). The search was conducted by a female assistant principal and female secretary and included a search of both the upper and lower body, as the defendants did not have any indication as to where drugs could possibly be hidden on the plaintiff. *Williams by Williams v. Ellington*, 936 F.2d 881, 883 (6th Cir.1991). The court held that the "[d]efendants were not unreasonable, in light of the item sought (a small vial containing suspected narcotics), in conducting a search so personally intrusive in nature." *Id.* at 887.

The Seventh Circuit upheld the reasonableness in scope of the strip search of a male student in *Cornfield By Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1323 (7th Cir.1993). A male teacher and male dean performed a full strip

search on the suspicion that the student was "crotching" drugs. The student was stripped entirely but allowed to wear a gym uniform while the searches inspected his clothing. *Id.* at 1319. "[G]iven Spencer and Frye's suspicion that Cornfield was crotching drugs, their conclusion that a strip search was the least intrusive way to confirm or deny their suspicions was not unreasonable." *Id.* at 1323.

Here, the scope of the search was reasonably related to the objectives of the search. The information alleged that Kelly Phaneuf hid marijuana in her underpants. It was therefore necessary to check the underpants. Phaneuf argues that it was not necessary to check her shirt and bra on the suspicion that she had marijuana down her pants. She argues that this part of the search was unreasonably intrusive. Cipriano never ordered Kelly to lift up her shirt and bra. Her instructions were limited to Kelly's underpants, an area limited in scope to the information from the tip. The defendant Fraikin also never ordered Kelly to lift her shirt. From the record, it appears that Kelly initiated the search of her shirt and bra herself without instruction from Cipriano or Fraikin.

The defendants were within the scope of reasonable intrusion in light of the age and sex of the student. The strip search was conducted by the plaintiff's own mother in the presence of a female school nurse. As the plaintiff's mother, Lisa Phaneuf was the person from whom the plaintiff had the least reason to be embarrassed. Although there is dispute as to whether the nurse watched the search, this is not a dispute of material fact relevant to the motion for summary judgment. A nurse, as a faculty member employed by the school as a medical confidant to the students, is a more appropriate employee than a teacher or security guard to conduct a search of a student's person. From the record, the only other person in the nurse's station at the time of the search was defendant Cipriano, who is also a female. Although the doorway of the room in which the search was conducted did not have an actual door, it was reasonably partitioned. There was no one else in the station to intrude upon Kelly Phaneuf's privacy during the search.

Finally, the nature of the suspected infraction justified the search. The Supreme Court has many times upheld the reasonableness of searches and subsequent invasion of privacy when concerned with drug use and possession in the nation's schools. "Indeed, the nationwide drug epidemic makes the war against drugs a pressing concern in every school." *Board of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie City v. Earls,* 536 U.S. 822, 834, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002) "[T]he effects of a drug-infested school are visited not just upon the users, but upon the entire student body and faculty, as the educational process is disrupted." *Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 662, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995).

The senior students at Plainville High School, including Kelly Phaneuf, were to attend an off-campus picnic on the day of the search. The school would have less control over the students, and the students were more vulnerable to the negative influence of drugs while off campus. Considering the possible harm that could come to the students from drug use while off-campus but under the school's guardianship, the defendants were justified to thoroughly investigate their suspicion.

Because the Court concludes that the search of Kelly Phaneuf's person was reasonable at inception and in scope, the defendants' motion for summary judgment is granted.

Because the defendants' motion for summary judgment is granted on their first

claim, there is no need to discuss the defendants' qualified immunity claim.

## II. State Law Causes of Action

Having granted the defendants' motion for summary judgment on the federal law causes of action, the court declines to exercise its discretion to consider plaintiff's state law causes of action. *See Carnegie Mellon v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *accord In re Porges,* 44 F.3d 159, 162 (2d Cir. 1995) (stating that court is "not required to dismiss [plaintiff's] state claims [but] dismissal of such claims is a general rule"). The Court therefore dismisses the causes of action brought pursuant to Connecticut law without prejudice.

### CONCLUSION

For the foregoing reasons, the foregoing motion for summary judgment (document no. 20) is granted.