## FELIX DANSO *v.* UNIVERSITY OF CONNECTICUT ET AL.

Superior Court, Judicial District of Tolland
File No. CV-06-4006110S

Memorandum filed January 17, 2007

*James Wing, Jr.*, for the plaintiff.

*Michael Sullivan*, for the defendants.

SFERRAZZA, J. The plaintiff, Felix Danso, applies for a temporary injunction requiring the defendant, the University of Connecticut (UConn), to reinstate the plaintiff as a full-time student, in good standing, at the university. On January 5, 2007, the court held an evidentiary hearing on this application and finds the following facts.

Donta Johnson is a community standards specialist employed by UConn. His duties include oversight of controversies arising under the student code, which is a set of rules and procedures published in a handbook and disseminated to UConn students. Within the code

are standards of conduct for students and disciplinary protocols for handling alleged breaches of these standards.

On March 13, 2006, Johnson received a complaint from professor Kristen Kimball regarding the plaintiff's behavior with respect to another student, Lisa Ramondetta. On that date, the plaintiff was a junior at the university.

Professor Kimball was disturbed by an e-mail that the plaintiff had sent her. The e-mail revealed information about the personal life of Ramondetta and evinced excessive interest on the part of the plaintiff in Ramondetta's activities. The e-mail implored professor Kimball to intervene to protect Ramondetta from supposed dangers of her seeing certain male students. Among other things, the e-mail stated:

"I know Lisa will hate me for this but I can live with it but I can't live with the fact that I know these [guys'] intentions and [no one] doing anything about it. She thinks I'm trying to control her but I'm not.

"I don't mind if she hates me forever because I'm getting in her life. In fact I'll love it but I just can't let her go through stuff like this for her to be hurt."

The plaintiff had made contact initially with Ramondetta in a student chat room by using a false name and providing her with other fabricated biographical information. Eventually, Ramondetta learned of the plaintiff's true identity. Once revealed, the plaintiff made several attempts to date her; however, Ramondetta steadfastly refused these overtures. The plaintiff continued to pursue her by appearing, uninvited, at her dormitory room and by attempting to shower her with gifts. Ramondetta rebuffed the plaintiff's attention and made it clear that she wanted nothing to do with him.

Upon receipt of Professor Kimball's complaint, Johnson interviewed her, Ramondetta and the plaintiff. At a March 14, 2006 meeting with the plaintiff, Johnson explained his own role, the nature of the complaint and Ramondetta's desire that the plaintiff refrain from trying to communicate with her in any fashion. Johnson also gave the plaintiff a "no-contact" letter that informed the plaintiff that his past actions constituted "harassment, intimidation, [and] disrespectful behavior" regarding Ramondetta. Further, the no-contact letter directed the plaintiff "to have absolutely no contact either directly or indirectly (through other people, electronic means or otherwise)." The no contact letter also forbade the plaintiff from visiting her dormitory building. Last, the letter warns the plaintiff that any violation of the no contact letter could result in suspension or expulsion.

Ramondetta was satisfied with this action by Johnson and declined to press the charges against the plaintiff any further.

Johnson met again with the plaintiff a few days later. At this meeting, Johnson explained the disciplinary routes available with respect to allegations of student misconduct. Johnson referred the plaintiff to a mental health counselor. At that time, the plaintiff complained that Ramondetta was falsely linking computer screen names to the plaintiff. He presented Johnson with a stack of e-mails which the plaintiff claimed were fraudulently ascribed to him. Johnson noted that none of the e-mails was dated after the no contact letter. The plaintiff wanted Johnson to arrange mediation between the plaintiff and Ramondetta. Johnson was willing to mediate but Ramondetta declined to participate.

On April 26, 2006, Ramondetta reported to Johnson that she learned from a friend, Kevin Burns, that the plaintiff, on April 25, 2006, approached Burns inquiring

about Ramondetta's activities. The plaintiff offered to pay Burns to spy on Ramondetta.

On April 26, 2006, Johnson wrote to the plaintiff and scheduled an administrative conference with him for May 3, 2006. At the conference, Johnson advised the plaintiff of the new allegations, characterized the purported conduct as a violation of the no contact letter, and as being a form of stalking, intimidation and threatening behavior. Johnson gave the plaintiff a copy of the report and informed him that the new charges would have to be resolved either by a voluntary agreement or by a "judicial" hearing.

The plaintiff accepted no voluntary resolution, and he was notified on May 23, 2006, that a disciplinary hearing would occur on May 30, 2006. The notification letter stated that the charges against him stemmed from an April 26, 2006 incident. Additional details regarding this notification letter will be discussed later in this memorandum of decision.

Initially, the hearing had been scheduled for the time right after final exams had ended, which was on May 8, 2006. The plaintiff, however, requested that the hearing be postponed because a family member was undergoing surgery. This request was granted. The plaintiff never complained that the May 30 hearing date would hamper his ability to produce witnesses in his defense.

The student code handbook permits both a complaining and accused student to have a "support person" with them at the disciplinary hearing. The support person can be any nondisruptive person, including an attorney. The student may consult with the support person, but the support person does not participate by questioning witnesses or making argument. The plaintiff wanted a Ms. Lewis to act as his support person, but her retirement on May 30, 2006, precluded this from

happening. The plaintiff chose no other support person to accompany him at the hearing.

The hearing was conducted by the UConn director of community standards, Catherine Cocks. Cocks was also Johnson's immediate supervisor. Part IV:C of the student code handbook permits the hearing to occur before a hearing board or before an administrative officer alone, as occurred in the present case.

At the hearing, both the plaintiff and Ramondetta were allowed to make opening and closing arguments, to call witnesses on their behalf, to be present throughout the proceeding and to pose relevant questions to witnesses. The code permits written statements of appearing or nonappearing witnesses to be introduced. The hearing was recorded.

Under parts III:16 and IV.D.K. of the student code, the accused student is presumed "not responsible" until the facts presented at the hearing prove responsibility for the charged misbehavior by clear and convincing evidence,. Hearing official Cocks determined that the evidence before her proved, clearly and convincingly, that the plaintiff was obsessed with Ramondetta, that he pursued her relentlessly despite her repeated protests, that he stalked her and that his behavior caused her to be intimidated and to suffer emotionally.

The hearing officer then conducted a sanction phase to determine what disciplinary action ought to be taken. Again, the disputants were allowed to be present, introduce evidence and argue their positions. Cocks suspended the plaintiff as a UConn student from May 15, 2006, until August 15, 2007. The suspension prevents the plaintiff from engaging in any student activities and from earning any academic credit. Also, the plaintiff must apply for readmission once the suspension expires, and this application will require him to produce proof of appropriate counseling. Upon readmission, the

plaintiff will be on probation for one year and cannot live on campus during probation.

Part IV:F of the student code provides an internal appeal process. Under part IV:F 2, the appeal is limited to reviewing the decision of the hearing official for significant, procedural error and consideration of newly discovered evidence, The plaintiff took an appeal, and on June 3, 2006, vice president of student affairs, John Saddlemire, issued his decision denying the appeal.

I

As a threshold matter, the court must identify its role in deciding this application for a temporary injunction. This litigation is not an administrative appeal of the university's decision to suspend the plaintiff. Also, neither party has identified any statutory or regulatory procedure permitting direct judicial review of a disciplinary decision at a state college.

"A temporary injunction is a preliminary order of court, granted at the outset or during the pendency of an action, forbidding the performance of the threatened acts described . . . until the rights of the parties . . . shall have been finally determined by the court." *Deming* v. *Bradstreet*, 85 Conn. 650, 659, 84 A. 116 (1912). The primary purpose of a temporary injunction is to maintain the status quo until the rights of the various parties can be sorted out, after a hearing on the merits. *Clinton* v. *Middlesex Assurance Co.*, 37 Conn. App. 269, 270, 655 A.2d 814 (1995).

In order for the court to issue a temporary injunction, the applicant must establish (1) a reasonable probability of success on the merits at a final hearing; (2) irreparable injury unless the injunction is granted; and (3) no adequate remedy at law. *Covenant Radio Corp.* v. *Ten Eighty Corp.*, 35 Conn. Sup. 1, 3, 390 A.2d 949 (1977). If irreparable injury is demonstrated, the trial court

ought to issue the temporary injunction, unless it is clear that the plaintiff will not prevail at the trial on the merits. *Olcott* v. *Pendleton,* 128 Conn. 292, 295, 22 A.2d 633 (1941).

## II

The issues before the court are further circumscribed by the fact that the defendants are state entities or officials acting in an official capacity. The defendants are, therefore, entitled to sovereign immunity. There is no claim nor evidence that the plaintiff sought permission of the claims commissioner to sue these defendants pursuant to General Statutes § 4-141 et seq. In the absence of such permission or statutory authority to sue these defendants, the court's jurisdiction to adjudicate this matter is quite limited. *Watson* v. *Pieszak,* 98 Conn. App. 333, 335, 908 A.2d 1115 (2006).

An exception to the doctrine of sovereign immunity lies for those seeking injunctive relief against a state official acting either (1) in excess of statutory authority or (2) pursuant to an unconstitutional statute. *Cox* v. *Aiken,* 278 Conn. 204, 212, 897 A.2d 71 (2006); *Miller* v. *Egan,* 265 Conn. 301, 313–14, 828 A.2d 549 (2003). There is no claim that the defendants in the present case have exceeded statutory power in suspending the plaintiff from the university. Thus, in order for the plaintiff to establish a reasonable likelihood of success on the merits, he must demonstrate that the actions of the disciplinary officials at UConn violated his constitutional rights. In particular, the only plausible constitutional claim is that the suspension proceeding lacked due process.

## III

There can be no valid substantive due process claim in the present case. Substantive due process is controverted only if state action affects a *fundamental* right,

i.e., one "implicit in the concept of ordered liberty." (Internal quotation marks omitted.) *C.B.* v. *Driscoll*, 82 F.3d 383, 387 (11th Cir. 1996). There is no fundamental right to attend college for purposes of substantive due process analysis. Id. Therefore, substantive due process claims regarding suspension from school "are without merit." Id.

## IV

The court must then address whether the plaintiff's right to procedural due process has been infringed by his suspension from UConn.

It is doubtful that a college student attending a state university has a valid property interest in staying in school. In contrast, high school students attending a public school do so because the opportunity for a high school education is mandated by statute and is compulsory. This state created entitlement results in a "constitutionally protected property interest" in attending a public high school. *Packer* v. *Board of Education*, 246 Conn. 89, 105, 717 A.2d 117 (1998).

Undoubtedly, however, a student attending a state college has a liberty interest in continuing that education. *Board of Regents* v. *Roth*, 408 U.S. 564, 572, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Disciplinary actions which seriously damage a student's reputation among fellow students and teachers and which may impair future educational and employment opportunities affect a liberty interest, and such actions must satisfy procedural due process. *Goss* v. *Lopez*, 419 U.S. 565, 575–76, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Dixon* v. *Alabama State Board of Education*, 294 F.2d 150, 156, (5th Cir.), cert. denied, 368 U.S. 930, 82 S. Ct. 368, 7 L. Ed. 2d 193 (1961).

*Goss* addressed only short-term suspensions and leaves the precise contours of minimum procedural due process for longer suspensions undefined. *Watson* v. *Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001). The federal

Circuit Courts have recognized that, as to long-term suspensions, due process requires the court to balance three general factors, viz., "(1) the private interest that will be affected by the official action, (2) the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the fiscal and administrative burden, that the additional or substitute procedural requirements would entail." Id.

The authority of a college to prescribe and enforce standards of student behavior is very broad. *Goss* v. *Lopez*, supra, 419 U.S. 574. Essentially, due process means the "opportunity to be heard at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Nash* v. *Auburn University*, 812 F.2d 655, 660 (11th Cir. 1987). Due process is a flexible standard that will bend with the practicalities of the circumstances. Id. The obligation of the university contemplating suspension of a student is to give that student "*some* kind of notice" and afford "*some* kind of hearing." (Emphasis in original.) *Goss* v. *Lopez*, supra, 419 U.S. 579.

Due process does not require, however, that the notice and hearing attendant to suspension of a college student resemble a "full-dress" civil or criminal trial. *Dixon* v. *Alabama State Board of Education*, supra, 294 F.2d 159. The adequacy of the proceedings is measured by rudimentary fairness and not by strict formality. Id. The notice and hearing process may even be nonadversarial. *Davis* v. *Ann Arbor Public Schools*, 313 F. Sup. 1217, 1227 (E.D. Mich. 1970).

V

The plaintiff received a letter, dated May 3, 2006, enumerating the specific provisions of the student code

that were to be the charges against him. These allegations asserted noncompliance with university officials, stalking, threatening or endangering conduct and disrespectful behavior. The letter states that these accusations arose from an incident on April 26, 2006. Further, the letter warned the plaintiff that the outcome of the administrative conference with Johnson would be a mutually agreed upon resolution or a disciplinary hearing.

At the May 3, 2006 administrative conference, Johnson gave the plaintiff a copy of the incident report, which included the April 26, 2006 statement from Ramondetta concerning what she was told by Burns the previous day about the plaintiff's offer of cash for information about her. The incident report also listed the purported code violations. The incident report also included Ramondetta's summary of her history of troubles with the plaintiff's unwanted attention toward her.

Johnson attempted to hand the plaintiff a notification letter advising him of the hearing date. The plaintiff refused to accept it. On May 23, 2006, Johnson sent the plaintiff a notification letter alerting him that his hearing on the matters discussed at the May 3, 2006 administrative conference would be held on May 30, 2006.

The notification letter listed the specific violations and a summary of Ramondetta's report of April 26, 2006. It informed the plaintiff of his hearing rights, including the right to attend, his right to a support person, a list of potential witnesses, which included Ramondetta, her roommate, Robin Fatseas, Burns and professor Kimball, his right to bring witnesses to testify at the hearing and his right to submit a written statement from himself or others, including character witnesses.

The plaintiff contends that this notice was deficient because evidence of incidents other than the one described by Ramondetta on April 26, 2006, were to be

considered at the May 30, 2006 hearing. The court disagrees.

Any reasonable college student in the plaintiff's position would anticipate that evidence regarding his previous behavior with respect to Ramondetta would be a necessary backdrop so that the hearing official could ascertain whether the alleged conduct of the plaintiff on April 25, 2006, if proven, constituted stalking, threatening or disrespectful behavior or violated the no contact order. Also, the plaintiff never complained at the hearing that this type of evidence was a surprise or caused him to be unprepared to defend himself. To the contrary, much of the plaintiff's testimony at this hearing dealt with his version of the previous history between Ramondetta and himself. The failure to raise a claim of insufficient notice at the student disciplinary proceeding itself has been held to be a waiver of any due process claim based on delinquent notice. *Anderson* v. *School Board of Seminole County*, 830 So. 2d 952, 953 (Fla. App. 2002), review denied, 845 So. 2d 887 (Fla. 2003); *Rutz* v. *Essex Junction Prudential Committee*, 142 Vt. 400, 410, 457 A.2d 1368 (1983).

"There are no hard and fast rules by which to measure meaningful notice." *Nash* v. *Auburn University*, supra, 812 F.2d 661. All that is demanded is information sufficient to apprise a reasonable student of the subject matter of the hearing, its time and place. There is no requirement that the accused student be advised, beforehand, of the nature of the evidence against the student as long as the student has the opportunity to attend the hearing. Id., 662–63. In the present case, the plaintiff was provided with Ramondetta's statement, and he was present throughout the hearing.

In order to establish an infringement of his due process rights to notice, the plaintiff must show that the notice he received caused him "substantial prejudice." *Keough* v. *Tate County Board of Education*, 748 F.2d

1077, 1083 (5th Cir. 1984). The plaintiff has failed to demonstrate how the multiple notices he was given prejudiced him in his defense at the hearing.

Notice of a suspension proceeding may be written, oral or a combination of both. *Watson* v. *Beckel*, supra, 242 F.3d 1240–41. Here, the plaintiff knew what the claims against him at the hearing would address by virtue of the May 3, 2006 letter, the administrative conference with Johnson and the May 23, 2006 notification letter.

## VI

The plaintiff also claims that he was denied due process at his disciplinary hearing because hearsay evidence was considered, the hearing official restricted his testimony and questions to witnesses, the scheduling of the hearing after final exams hampered his ability to procure student witnesses and the support person he desired was unavailable.

The court reiterates that the matter before it is an application for a temporary injunction and not an administrative appeal. The court does not look to see if the student code handbook protocol was strictly followed, nor does the court pass on the propriety of the hearing officer's decision to suspend the plaintiff. Those matters are for university administrators to review rather than the court. *Davis* v. *Ann Arbor Public Schools*, supra, 313 F. Sup. 1227. Instead, the court examines whether the minimum requirements of due process were satisfied.

## A

At the hearing, Ramondetta testified, as did Fatseas, her roommate, as well as Johnson, in support of the charges against the plaintiff. The plaintiff also testified

in his own behalf. A written statement from Burns was considered, and Ramondetta and Fatseas occasionally testified about information others had related to them. The plaintiff argues that this hearsay evidence was a denial of due process.

First, and foremost, the rules of evidence applicable to trials are inapplicable to school disciplinary hearings. *Boykins* v. *Fairfield Board of Education*, 492 F.2d 697, 701 (5th Cir. 1974).

As long as a modicum of accuracy is produced by the hearing procedures, due process is met. Id. In *Hammock* v. *Keys*, 93 F. Sup. 2d 1222 (S.D. Ala. 2000), the federal District Court found no due process violation even though *no* witnesses gave live testimony at an expulsion hearing. Instead, the hearing panel relied on written reports regarding a high school student possessing illegal drugs in a vehicle on school grounds.

The fact that Burns' statement was considered does not offend due process. In judicial proceedings hearsay evidence is excluded, at least in significant part, because the opposing party has no opportunity to cross-examine the declarant. Due process, however, does not require that a student at a disciplinary hearing be afforded a right to cross-examine witnesses or compel testimony. *Davis* v. *Ann Arbor Public Schools*, supra, 313 F. Sup. 1227; *Dixon* v. *Alabama State Board of Education*, supra, 294 F.2d 159. Written statements in lieu of live testimony comport with due process as long as the student facing disciplinary action has the opportunity to review the statement and offer rebuttal evidence. *Dixon* v. *Alabama State Board of Education*, supra, 159.

B

During the plaintiff's disciplinary hearing, both he and Ramondetta were permitted to ask questions of

witnesses directly or through Cocks. The plaintiff asserts that Cocks unduly restricted his own testimony and questioning of witnesses. The court has carefully reviewed the transcript of the hearing before Cocks and finds that, rather than unfairly restricting the plaintiff, Cocks appropriately constrained his testimony and questioning to relevant topics. This type of action was found to be within the bounds of due process in *Nash* v. *Auburn University,* supra, 812 F.2d 664.

### C

The plaintiff also raises the issue that evidence of incidents predating the April 25, 2006 event was allowed and used to justify his suspension. As noted previously, this evidence was essential to put the alleged misconduct of April 25, 2006 in context and for the purpose of assessing adequate sanctions. A disciplinary official's decision comports with due process if "there is at least one viable ground" for the decision to suspend a student. *Rogers* v. *Gooding Public Joint School District,* 135 Idaho 480, 484, 20 P.3d 16 (2001).

To repeat, the plaintiff never voiced concern at his disciplinary hearing that irrelevant matters were being considered and testified about. This failure to object to such evidence during the hearing is a waiver of any due process violation based on that claim. *Anderson* v. *School Board of Seminole County,* supra, 830 So. 2d 953; *Rutz* v. *Essex Junction Prudential Committee,* supra, 142 Vt. 410.

### D

As indicated previously, the disciplinary hearing was scheduled for a date after the final exam period ended on May 8, 2006. The plaintiff contends that this scheduling deprived him of the opportunity to present witnesses who may have left the campus. First, at the

hearing on this motion, no such witnesses were identified or much less shown to have pertinent information concerning the student conduct violations with which the plaintiff was charged. Second, the plaintiff never alerted the hearing official or Johnson that he encountered difficulty obtaining the presence of any particular witness. The student code handbook places the burden of securing witnesses on the student, and there is no due process right to compel witnesses to attend and testify. *Dixon* v. *Alabama State Board of Education*, supra, 294 F.2d 159.

E

The plaintiff also argues that the unavailability of his desired support person, Lewis, denied him due process. The student code protocol permits accused students to have a support person present at the disciplinary proceedings to advise the student. The university has no obligation to supply the support person. Even though Lewis was unavailable, the plaintiff could had chosen anyone else to accompany him, including an attorney. He opted to proceed alone.

At the hearing on this motion, no evidence was adduced that Lewis would have consented to serve as the plaintiff's support person if she had been available. More importantly, there was no prejudice shown that flowed from her absence. Insubstantial irregularities in the suspension hearing cannot form the basis for a due process violation.

Additionally, the court must balance the plaintiff's desire against the university's need to avoid disruption of final exams. The paramount purpose of the university is the education of its students. Clearly, the completion of final examinations served this purpose for the students involved in this controversy. It should also be kept in mind that the university accommodated the

plaintiff in rescheduling his hearing because of a family health problem.

The plaintiff also argues that the scheduling of his hearing for May 30, 2006, exceeded the within ten days "requirement" of the student code. There is no such requirement. The student code merely states that "normally" a hearing will occur within ten days of notification. For the reasons indicated in the preceding section of this memorandum of decision, this claim is without merit.

In addition, the plaintiff never complained about this issue at the disciplinary hearing.

The court concludes that the scheduling of the hearing for May 30, 2006, did not breach the plaintiff's due process rights.

### VII

In sum, the court concludes that both the notice and hearing procedures employed by UConn with respect to the plaintiff's suspension satisfied the minimum requirements of procedural due process and that the plaintiff has failed to show that he was substantially prejudiced by these procedures. Therefore, the plaintiff has also failed to demonstrate a reasonable likelihood of success on the merits of this case. The motion for a temporary injunction is, therefore, denied.